[No. H011377. Sixth Dist. Dec. 2, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHNNY DAVID ZAMARRON, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts A, B and C.

COUNSEL

Eleanor Kraft, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald E. Niver and Aileen Bunney, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**MIHARA, J.**—Defendant was convicted of kidnapping to commit robbery (Pen. Code, § 209, subd. (b)), robbery (Pen. Code, § 211) and escape (Pen. Code, § 4532, subd. (b)), and he was found to have personally used a firearm in the commission of the kidnapping and robbery (Pen. Code, § 12022.5) and

to have suffered a prior serious felony conviction (Pen. Code, § 667) for which he had served a prison term (Pen. Code, § 667.5). Defendant was committed to state prison for life with the possibility of parole. On appeal, he claims that (1) the trial court prejudicially erred in excluding evidence of his state of mind at the time of his escape to rebut the prosecution's assertion that the escape showed "consciousness of guilt," (2) the trial court's response to a question from the jury during deliberations amounted to a "directed verdict," (3) the serious felony enhancement could not be imposed because it was charged in an indictment which bore the same case number as the indictment for escape, and escape is not a serious felony to which a serious felony enhancement can attach, (4) the trial court prejudicially erred in instructing the jury on the serious felony enhancement and (5) the trial court erred in selecting the aggravated term for the weapon enhancement. We affirm the judgment.

## FACTS

Defendant and Richard Rubio convinced car salesman Rusty Smith to take them for a test drive. Defendant drove the vehicle some distance before Smith suggested that they return to the dealership. At this point, defendant said "this is a holdup," and Rubio displayed a gun and cocked it. Smith told defendant that he had a young baby and "I wasn't about to give my life in trade for a car, no one would expect that from me, and I wanted to see my child grow up." Defendant told him "[s]it back and hang tight and you might get to see your grandkids." Defendant compelled Smith to empty his pockets. Smith tried to be cooperative "[b]ecause I wanted to live." Defendant continued driving for 40 minutes while Smith repeatedly begged him to let him go. Defendant responded "Shut up." Eventually, they stopped in an isolated area near a logging road. Smith started to get out of the car, but defendant, in a threatening manner, said "[s]top. Don't get out of the car. Just stay perfectly still." Defendant asked Rubio for the gun. This obtained, defendant got out of the car, walked over to the other side of the car and told Smith to get out. Holding the gun in his hand, defendant directed Smith to remove some identifying stickers from the car's windows. Defendant then told Smith to walk up a nearby logging road. After Smith did so, defendant and Rubio drove off.

Defendant was subsequently arrested and charged by indictment with robbery and kidnapping to commit robbery. It was further alleged that he had personally used a firearm in the commission of these offenses. In the midst of the first trial on these offenses, defendant escaped from the Santa Cruz County jail. A mistrial was declared. Defendant was subsequently recaptured and charged by indictment with escape (Pen. Code, § 4532, subd. (b)). A

separate indictment was returned alleging that defendant had previously been convicted of a serious felony (Pen. Code, § 667, subd. (a)) and had served a prison term therefor (Pen. Code, § 667.5). The three indictments were consolidated for trial, and, at defendant's request, the prior conviction and prison prior allegations were bifurcated from the substantive counts. Just before opening statements, defendant pled guilty to the escape count. Defendant's position at trial was that he was guilty of robbery but not kidnapping.[1] The jury returned guilty verdicts and, after a separate trial on the serious felony and prison prior allegations, found those allegations true. Defendant was committed to state prison for life with the possibility of parole. He filed a timely notice of appeal.

## DISCUSSION

### A.-C.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

### D.    IMPOSITION OF UPPER TERM FOR FIREARM USE ENHANCEMENT

Defendant claims that the trial court prejudicially erred in failing to state reasons for its selection of the upper term for the firearm use enhancement. "The court shall order imposition of the middle term [for the firearm use enhancement] unless there are circumstances in aggravation or mitigation. The court shall state its reasons for its enhancement choice on the record at the time of sentencing." (Pen. Code, § 12022.5, subd. (a).) The trial court noted that *the robbery offense* was aggravated because the victim was vulnerable and the manner in which the crime was committed reflected planning. It then imposed an aggravated term for the robbery count, and, without further comment, it imposed the upper term for the firearm use enhancement. As defendant points out, the record does not contain a statement of the trial court's reasons for imposing the upper term for the firearm use enhancement. The Attorney General asserts that the trial court was not required to "separately state its reasons for imposing the aggravated term for the enhancement."

We understand the Attorney General's argument to be essentially that a statement of reasons for selecting the aggravated term on the substantive

---

[1]Defendant's trial counsel's opening statement limited the defense. "John Zamarron was one of the perpetrators. The issue in this case is going to be what crime was committed."

*See footnote, *ante*, page 865.

count is adequate to support imposition of the upper term on the enhancement even though no reasons are stated for aggravating the term on the enhancement. This argument is belied by the express language of Penal Code section 12022.5, subdivision (a). "The court shall state its reasons *for its enhancement choice* on the record at the time of sentencing." (Pen. Code, § 12022.5, subd. (a), italics added.) While the trial court did state its reasons for its choice of an aggravated term for *the robbery count*, it did not state its reasons for "its enhancement choice" as it was required to do under Penal Code section 12022.5, subdivision (a). The Attorney General has failed to explain why it is not error for a trial court to violate the express dictates of the Legislature. The trial court erred by failing to state reasons for its choice of the upper term for the firearm use enhancement.

■ The Attorney General claims that defendant waived his right to raise this issue on appeal by failing to object below. We disagree. "Generally speaking, the rationale underlying the rule requiring objection below as a prerequisite to complaint on appeal regarding some error by the trial court is predicated on the premise that, in its absence, the People would be deprived of the opportunity to cure the defect in the trial court and the defendant would be allowed to gamble on a favorable result—secure in the knowledge that if he did not prevail there, he would be able to prevail on appeal. [Citations.] [¶] It is obvious that this rationale for the rule of waiver is inapplicable to [certain] sentencing procedures since a defendant can gain no advantage over the People by his failure to make a timely objection below. We conclude that where the rationale for a rule of waiver has no application to a particular situation, the rule of waiver itself is no longer viable in that particular situation and can have no effect or vitality. Hence, we reject the Attorney General's argument that defendant must be held to have waived his right to claim error before us in the trial court's failure to state its reasons for sentencing defendant to the upper term." (*People* v. *Jones* (1980) 111 Cal.App.3d 597, 605 [169 Cal.Rptr. 28].) We agree with *Jones.* Defendant is entitled to raise this issue on appeal.

■ The next question is whether the error necessitates a remand for resentencing. A failure to state reasons for a sentencing choice is harmless if it is not reasonably probable that resentencing would result in a disposition more favorable to the defendant. (*People* v. *McLeod* (1989) 210 Cal.App.3d 585, 590-591 [258 Cal.Rptr. 496].) ■ In order to determine whether a result more favorable to defendant was reasonably probable, we must determine which circumstances the trial court was entitled to consider in deciding whether to impose the upper term for the firearm use enhancement. This determination requires us to consider the validity of the second sentence of

California Rules of Court, rule 428(b). "The upper term may be imposed for an enhancement only when there are circumstances in aggravation *that relate directly to the fact giving rise to the enhancement.*" (Cal. Rules of Court, rule 428(b), italics added.) The Attorney General argues that this portion of the rule is "invalid" because it is inconsistent with the intent underlying the Legislature's 1989 amendment of Penal Code section 12022.5, subdivision (a).[8]

Prior to January 1, 1990, a firearm use enhancement under Penal Code section 12022.5, subdivision (a) was punishable by a two-year term. Effective January 1, 1990, the Legislature amended the statute to change the term to three, four or five years. (Stats. 1989, ch. 1044, § 5, p. 3635; *id.*, ch. 1167, § 5, pp. 4529-4530.) Unquestionably, this amendment was intended to increase the penalty for firearm use and give judges the discretion to select a longer term for firearm use where appropriate. The Legislature specified that the four-year term should be imposed "unless there are circumstances in aggravation or mitigation." (Pen. Code, § 12022.5, subd. (a).) The 1990 California Rules of Court contained lists of "circumstances in aggravation" and "circumstances in mitigation" each of which included both "[f]acts relating to the crime" and "[f]acts relating to the defendant." (Cal. Rules of Court, rules 421 and 423.) Thus, when the amendment to Penal Code section 12022.5, subdivision (a) took effect on January 1, 1990, the discretion of a trial court faced with the decision as to which of the three terms to impose for a firearm use enhancement would have been guided by rules 421 and 423, since trial courts are statutorily obligated to "apply the sentencing rules of the Judicial Council." (Pen. Code, § 1170, subd. (a)(1), see also Pen. Code, § 1170.1, subd. (d).) The statute's express reference to "circumstances in aggravation or mitigation" can only be viewed as a reflection of the Legislature's intent that a trial court selecting an aggravated or mitigated term for a firearm use enhancement should be guided by the circumstances listed in rules 421 and 423.

Thereafter, however, the Judicial Council adopted California Rules of Court, rule 428 which took effect on January 1, 1991. The second sentence of rule 428(b) purports to limit the circumstances in aggravation upon which a trial court can base a decision to impose the upper term for an enhancement to "circumstances in aggravation *that relate directly to the fact giving rise to the enhancement.*" (Cal. Rules of Court, rule 428(b), italics added.) This language appears to restrict the relevant aggravating circumstances to "[f]acts relating to the [firearm use]" and to preclude reliance on "facts relating to the defendant." By adopting this restrictive language, the Judicial

---

[8]This issue is currently under review by the California Supreme Court. (*People v. Hall* (Cal.App.)

Council sought to reduce the discretion which trial courts had been permitted to exercise between January 1, 1990, and January 1, 1991. However, the Judicial Council had no authority to reduce the discretion granted to the trial courts by Penal Code section 12022.5, subdivision (a). The Judicial Council is authorized to "adopt rules for court administration, practice and procedure, *not inconsistent with statute . . . .*" (Cal. Const., art. VI, § 6, italics added.) Because the second sentence of rule 428(b) is inconsistent with the legislative intent underlying Penal Code section 12022.5, subdivision (a), the Judicial Council's adoption of this language was in excess of the authority granted it under the California Constitution. Since the adoption of the second sentence of rule 428(b) was unauthorized, trial courts are not obligated to comply with this portion of the rule and may consider any aggravating circumstances relating to the firearm use and to the defendant in deciding whether to impose the upper term for a Penal Code section 12022.5, subdivision (a) enhancement.

Finally, we consider whether it is reasonably probable that the trial court would conclude on remand that defendant's use of a firearm was not aggravated. A fact is aggravating if it makes defendant's conduct distinctively worse than it would otherwise have been. (*People* v. *Leung* (1992) 5 Cal.App.4th 482 [7 Cal.Rptr.2d 290].) Because there were a number of potential aggravating circumstances here, and the trial court found that there were no mitigating circumstances, we cannot conclude that it is reasonably probable that defendant would achieve a better result on remand. First, we look at the facts relating to the use of the firearm. At the conclusion of their long journey into the Santa Cruz mountains, defendant obtained the firearm from Rubio and used it to facilitate Smith's compliance with his demands. While defendant did not point the firearm at Smith or fire it, by holding the gun while he directed Smith's actions, defendant implicitly threatened to use it if Smith did not comply. Combined with defendant's earlier veiled threat to kill Smith, defendant's use of the firearm was quite threatening. Though these facts alone would not convince us that a different result was improbable on remand, the facts set forth in the probation report about defendant *do* convince us that the upper term would be the probable result of a remand. Defendant is an unrepentant danger to society. Defendant's use of a firearm in the commission of this robbery occurred less than two months after he was released from state prison on parole. He told the probation officer that he "wanted a car" and knew that "what I did was wrong but I'm a criminal, that's who I am." Defendant takes pride in the fact that he belongs to Nuestra Familia and acknowledges that he would "do anything" this "brotherhood" asked him to do. In addition, defendant's record reflects a pattern of increasingly serious criminal behavior. Considering all of these aggravating circumstances, we do not consider it reasonably probable that anything other

than the upper term would be imposed on remand. Therefore, the trial court's error in failing to state reasons for its imposition of the upper term for the firearm use enhancement was harmless.

## CONCLUSION

The judgment is affirmed.

Cottle, P. J., and Wunderlich, J., concurred.

A petition for a rehearing was denied December 27, 1994, and appellant's petition for review by the Supreme Court was denied March 16, 1995.