58 Cal.Rptr.3d 287 (2007)
150 Cal.App.4th 254
The PEOPLE, Plaintiff and Respondent,
v.
Mark DIAZ, Defendant and Appellant.
No. B185735.
Court of Appeal of California, Second District, Division Seven.
April 25, 2007.
*290 Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.
Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Mary Jo Graves and Dane R. Gillette, Chief Assistant Attorneys General, Pamela C. Hamanaka, Senior Assistant Attorney General, Donald E. De Nicola, Deputy Solicitor General, Marc E. Turchin, Joseph P. Lee, Alene M. Games, Kristofer Jorstad, Lawrence M. Daniels, and Michael R. Johnsen, Deputy Attorneys General, for Plaintiff and Respondent.
Certified for Partial Publication.[*]
ZELON, J.
Mark Diaz was convicted of sexual penetration of a victim who was unable to resist due to intoxication, anesthesia, or controlled substance (Pen.[1] Code, § 289, subd. (e)), two counts of oral copulation by means of intoxication, anesthesia or controlled substance (§ 288a, subd. (i)), and two counts of rape by intoxication, anesthesia or controlled substance (§ 261, subd. (a)(3)). He appeals his conviction and sentence on six grounds, alleging that: (1) the primary evidence against him, a videotape, was improperly seized and should have been suppressed; (2) the videotape was inadmissible hearsay and its admission violated his rights under the Confrontation Clause of the United States Constitution; (3) there was insufficient evidence of the victim's inability to give consent; (4) the instructions on the subject of rape improperly created a mandatory presumption and shifted the burden of proof to him; (5) the trial court improperly denied his motion for a new trial; and (6) the imposition of upper term and consecutive sentences violated his Sixth Amendment right to a jury trial as set forth in Blakely v. Washington (2004) 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (Blakely). We affirm the convictions but impose midterm sentences on three counts.

FACTUAL AND PROCEDURAL BACKGROUND
Monica T. reported to the Pasadena Police Department that Diaz had sexually assaulted her while she was unconscious. After her report, the police sought and received a warrant to search Diaz's home for evidence relating to the sexual assault. The police seized various items from Diaz's apartment, including a videotape. The videotape did not depict Monica T.; instead, it was a recording of Diaz engaging in sexual intercourse and other sexual acts with an unknown woman who appeared to be semi-conscious.
Diaz was charged with 14 sexual offenses against Monica T. and the unknown woman, known as Jane Doe. At trial, Monica T. testified, but Jane Doe did not. The jury viewed the videotape depicting Diaz *291 engaged in sexual acts with Jane Doe. The jury acquitted Diaz of all counts pertaining to Monica T., but convicted him on the five counts alleged against him in which Jane Doe was the victim. The trial court denied Diaz's motion for a new trial based on error in admitting the videotape and the discovery of new evidence.
The trial court sentenced Diaz to the upper term of eight years on count 10, sexual penetration of a person prevented from resisting due to intoxication, anesthesia or controlled substance (§ 289, subd. (e)). The court imposed one-third the midterm sentence on the two counts of oral copulation by means of anesthesia or controlled substance (§ 288a, subd. (i)), to be served consecutively. On counts 13 and 14, rape by intoxication, anesthesia or controlled substance (§ 261, subd. (a)(3)), the trial court sentenced Diaz to consecutive upper terms under section 667.6, subdivision (d). Diaz appeals.

DISCUSSION

I.-V.[**]

VI. Sentencing Issues
The trial court sentenced Diaz to the upper term of eight years on count 10, sexual penetration of a victim who is prevented from resisting by intoxication, anesthesia, or a controlled substance (§ 289, subd. (e)). The court stated that it found four factors in aggravation and one in mitigation, and that the aggravators clearly outweighed that mitigator, leading to an upper term sentence. The court next imposed one-third the midterm sentence on counts 11 and 12, both for oral copulation by means of anesthesia or controlled substance, (§ 288a, subd. (i)), and designated them to run consecutively pursuant to section 1170.1, subdivision (a). On each of the two counts of rape by drugs (§ 261, subd. (a)(3)), the trial court sentenced Diaz to the upper term of eight years and concluded that it was required by section 667.6, subdivision (d) to order that the sentences be served consecutively because the crimes were committed on separate occasions. The trial court stated that in the event that its determination that section 667.6, subdivision (d) mandated consecutive sentences on counts 13 and 14 was incorrect, the court would nonetheless have elected to impose consecutive sentences on those counts under section 667.6, subdivision (c)[3] because the factors in aggravation outweighed the factors in mitigation.
While this case was pending on appeal, the United States Supreme Court issued its opinion in Cunningham v. California (2007) 549 U.S. ___, 127 S.Ct. 856, 166 L.Ed.2d 856 (Cunningham). We requested that the parties submit letter briefs on the impact of Cunningham on this case. Diaz contends that the three upper term sentences are improper under Apprendi v. New Jersey (2000) 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (Apprendi), Blakely, supra, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403, and Cunningham, and that the imposition of consecutive sentences on counts 13 and 14 is unconstitutional. The Attorney General argues that any Apprendi/Blakely/Cunningham objections have been waived and that the sentence is constitutionally valid.

A. Waiver/Forfeiture
The Attorney General contends Diaz waived or forfeited any Apprendi/Blakely/Cunningham error when he did *292 not object on Apprendi or Blakely grounds in the trial court, even though his sentencing hearing occurred over a year after the Blakely opinion had been issued by the U.S. Supreme Court. We reject this contention. Even if the forfeiture doctrine may reasonably be applied in this constitutional context (see People v. Vera (1997) 15 Cal.4th 269, 276-277, 62 Cal.Rptr.2d 754, 934 P.2d 1279 [claims of deprivation of certain fundamental constitutional rights are not forfeited by the failure to object in the trial court]), there is a general exception to the forfeiture rule for instances when an objection would have been futile. (People v. Boyette (2002) 29 Cal.4th 381, 432, 127 Cal.Rptr.2d 544, 58 P.3d 391; People v. Abbaszadeh (2003) 106 Cal. App.4th 642, 648, 130 Cal.Rptr.2d 873.) At the time of the sentencing hearing in this case, August 31, 2005, the California Supreme Court had already decided People v. Black (2005) 35 Cal.4th 1238, 29 Cal. Rptr.3d 740, 113 P.3d 534 (Black). In light of Black, it would have been futile for Diaz to object on the grounds that the jury rather than the trial court must find aggravating facts and that those facts must be found beyond a reasonable doubt. (§ 1170, subd. (b); Cal. Rules of Court, rules 4.409 & 4.420-4.421.) Diaz has neither waived nor forfeited his claim that the procedure by which he was sentenced violates the Sixth Amendment.

B. Upper Terms

1. Sixth Amendment Violation
The fundamental principle at issue here was announced in Apprendi, supra, 530 U.S. at page 490, 120 S.Ct. 2348: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." The Supreme Court clarified the meaning of the term "statutory maximum" in Blakely, supra, 542 U.S. at pages 303 and 304, 124 S.Ct. 2531, as "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant ... In other words, the relevant `statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts `which the law makes essential to the punishment,' [citation], and the judge exceeds his proper authority."
In California, pursuant to the Determinate Sentencing Law, most crimes, including those in counts 10, 13, and 14, have a statutory upper term, a middle term, and a low term sentence from which the judge selects. "Penal Code § 1170(b) ... controls the trial judge's choice [among the three sentences]; it provides that `the court shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of the crime.' '[Circumstances in aggravation or mitigation' are to be determined by the court after consideration of several items: the trial record; the probation officer's report; statements in aggravation or mitigation submitted by the parties, the victim, or the victim's family; `and any further evidence introduced at the sentencing hearing.'" (Cunningham, supra, 127 S.Ct. 856, 861-862.)
The United States Supreme Court has found California's determinate sentencing scheme constitutionally defective in two respects: first, in finding circumstances in aggravation, judgesnot juriesmake factual findings that have the effect of increasing the statutory maximum sentence for the crime by allowing the court to impose the upper term sentence; and *293 second, these aggravating factors are found by a preponderance of the evidence and not by proof beyond a reasonable doubt.[4] (Cunningham, supra, 127 S.Ct. at p. 868.) The Supreme Court explained that under California's Determinate Sentencing Law, "an upper term sentence may be imposed only when the trial judge finds an aggravating circumstance. [Citation.] An element of the charged offense, essential to a jury's determination of guilt, or admitted in a defendant's guilty plea, does not qualify as such a circumstance. [Citation.] Instead, aggravating circumstances depend on facts found discretely and solely by the judge. In accord with Blakely, therefore, the middle term prescribed in California's statutes, not the upper term, is the relevant statutory maximum. [Citation.] Because circumstances in aggravation are found by the judge, not the jury, and need only be established by a preponderance of the evidence, not beyond a reasonable doubt ..., the [Determinate Sentencing Law] violates Apprendi's bright-line rule: Except for a prior conviction, 'any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' [Citation.]" (Ibid.)
In light of the Supreme Court's ruling in Cunningham, supra, 127 S.Ct. 856, we conclude that in the absence of jury findings on the aggravating factors made beyond a reasonable doubt, the imposition of high term sentences on counts 10, 13, and 14 violated the Sixth Amendment. In selecting the high term, the trial court stated that it found four factors in aggravation and one in mitigation, and that the aggravators clearly outweighed that mitigator. The court described its analysis as follows:
"The court is going to find the following factors in aggravation: One, the crime involved great violence, great bodily harm, threat of great bodily harm, high degree of cruelty, viciousness, and callousness. Specifically I'm finding it involved a high degree of cruelty, viciousness and callousness. As I said, she was treated in a manner which completely denied her humanity, and any act, I believe, of rape involves a great violence. [¶] Second, the victim was particularly vulnerable. Third, the manner in which the crime was carried out indicates planning and sophistication. There's a camera by the bed that was used. Last, the defendant engaged in violent conduct which indicates a serious danger to society. Having sex against someone's will, whether it's used [sic] by violence or restraint or through the use of an intoxicant so the person is unconscious or not conscious, what occurs is what I consider to be violent conduct which indicates a serious danger to society. [¶] As a factor in mitigation, I find the defendant has either no prior record or insignificant record of criminal conduct considering the recency [sic ] and frequency of prior crimes."[5] The court refused to consider Diaz's intoxication as a mitigating factor, and stated, "I have taken into consideration some of the other factors [defense *294 counsel] mentioned, indicating that otherwise he's led a law-abiding life and that otherwise, outside of this event, he could be a good person. But I don't find that to be enough mitigation to outweigh the aggravation. I clearly find the aggravation outweighs the mitigation. [¶] On count 10, because the factors in aggravation outweigh the factors in mitigation, I'm sentencing him to [the] high term of eight years." The court imposed the upper term on counts 13 and 14 without any further comments to explain its selection of the upper term on those counts.
In order for the trial court to find each of the four aggravating factors it believed to be present, the court necessarily engaged in additional factfinding beyond the facts found true by the jury. This is exactly the factfinding that failed constitutional scrutiny in Cunningham: "If the jury's verdict alone does not authorize the sentence, if, instead, the judge must find an additional fact to impose the longer term, the Sixth Amendment requirement is not satisfied." (Cunningham, supra, 127 S.Ct. at p. 869.) In the absence of pertinent admissions by Diaz, the four aggravating factors on which the trial court relied to impose the upper term sentences on counts 10, 13, and 14 could only have been relied on had they been submitted to a jury for determination under the beyond a reasonable doubt standard of proof. As these factors were neither admitted nor found true by a jury beyond a reasonable doubt, they cannot, consistent with the Sixth Amendment, increase the statutory maximum punishment available for Diaz's crimes beyond the presumptive midterm sentence.

2. Particularly Vulnerable Victim Finding
In support of the high term sentences, the Attorney General argues that the finding that the victim was particularly vulnerable does not violate Blakely, supra, 542 U.S. 296, 124 S.Ct. 2531, because "the jury here necessarily found, in convicting appellant of the charged offenses, that appellant engaged in sexual acts with a woman incapable of consent. The trial court's aggravating circumstance finding that the victim was particularly vulnerable merely reflected this jury determination." If, as the Attorney General posits, vulnerability and incapacity to resist the sexual offenses are equivalent, then the victim's vulnerability is not a proper aggravating factor in light of the sexual offenses of which Diaz was convicted because, by definition, any victim of these offenses would be a particularly vulnerable victim, as he or she was "prevented from resisting" by an intoxicant, anesthetic substance, or controlled substance. (§§ 289, subd. (e); 288a, subd. (i); 261, subd. (a)(3).) Using elements as aggravators collapses the sentencing scheme by making every occurrence of a crime aggravated, undermining the purpose of an aggravating factor: "A fact is aggravating if it makes defendant's conduct distinctively worse than it would otherwise have been." (People v. Zamarron (1994) 30 Cal.App.4th 865, 872, 36 Cal. Rptr.2d 17.)
As a general rule, a fact that is an element of a crime may not be used to impose the upper term. (Cal. Rules of Court, rule 4.420(d).) Moreover, it has been held an analogous contexts that it is improper to base a finding of particular vulnerability on a fact that is an element of the crime. In People v. Flores (1981) 115 Cal.App.3d 924, at page 927, 171 Cal.Rptr. 777, the court held that a victim's minority is not a proper basis for a particular vulnerability finding when the victim's minority is an element of the offense. The Court of Appeal wrote that by defining certain sexual acts on minor victims as distinct *295 crimes with heightened punishments, "it seems clear that the Legislature already has determined that all persons of specified ages are `particularly vulnerable' by reason of their age alone...." (Ibid.) Here, it is clear that the Legislature considered individuals who were rendered incapable of resisting sexual penetration with a foreign object, oral copulation, and rape due to the influence of a controlled substance, intoxicant, or anesthetic substance to be particularly vulnerable, and accordingly, defined those acts as distinct crimes with their own statutory punishments. (§§ 289, subd. (e); 288a, subd. (i); 261, subd. (a)(3).) The element of prevention from resisting due to intoxication, controlled substance, or anesthetic cannot do double duty as an aggravating factor. (See Flores, at p. 927, 171 Cal.Rptr. 777; People v. Fernandez (1990) 226 Cal.App.3d 669, 680, 276 Cal.Rptr. 631 [victim cannot be vulnerable simply because she was a child where the defendant was convicted of lewd and lascivious conduct upon a child under the age of 14]; People v. Ginese (1981) 121 Cal.App.3d 468, 476-177, 175 Cal.Rptr. 383 [while a victim of an age range crime may be particularly vulnerable for reasons other than his or her age, the mere fact of minority cannot support a finding of particular vulnerability; it is "merely referring to punishable elements of the crime already incorporated into the child molesting statute"]; People v. Alvarado (2001) 87 Cal.App.4th 178, 195, 104 Cal.Rptr.2d 624 [vulnerability finding may not be based exclusively on victim being 81 years old when a sentence enhancement was imposed because the victim was over 65 years old; finding may, however, properly be based on victim's age in combination with other factors].)
Therefore, to the extent that the court's finding that the victim was particularly vulnerable "reflected" the jury's determination that she was incapable of resisting due to intoxication or controlled substance, then relying on the existence of a vulnerable victim as an aggravator constitutes an illegal dual use of facts. The problem of a dual use of facts distinguishes the instant case from People v. Calhoun (2007) 40 Cal.4th 398, 404-408, 53 Cal.Rptr.3d 539, 150 P.3d 220, on which the Attorney General relies to justify the vulnerable victim aggravator. Calhoun is inapposite because the aggravating factor found in that casethe fact that there were multiple victimswas necessarily encompassed by the jury's verdict but was not an element of the crime. In Calhoun, it was evident that the jury had necessarily concluded there were multiple manslaughter and reckless driving victims because the victims' names were included on the various verdict forms. (Id. at p. 406, 53 Cal. Rptr.3d 539, 150 P.3d 220.) The fact that there were multiple victims, however, was not part of any offense charged in Calhoun, so using the fact that there were multiple victims as an aggravating factor in Calhoun did not contravene the principle that an element of a crime may not be used to impose the high term sentence unlike here, where being incapable of resistance (and thus, the Attorney General argues, necessarily particularly vulnerable) was an element of the offenses on which Diaz was sentenced to the upper term.
For purposes of a finding that a victim was particularly vulnerable, "`Particularly ... means in a special or unusual degree, to an extent greater than in other cases. Vulnerability means defenseless, unguarded, unprotected, accessible, assailable, one who is susceptible to the defendant's criminal act.' [Citation.]" (People v. Loudermilk (1987) 195 Cal.App.3d 996, 1007, 241 Cal.Rptr. 208.) If the trial court believed that Diaz's conviction of sexual offenses based on victim incapacity necessarily meant that the victim was particularly *296 vulnerable, the court erred. If, instead, the trial court concluded that apart from the fact of her incapacitation by intoxication or controlled substance, Jane Doe was "defenseless, unguarded, unprotected, accessible, assailable, [or] susceptible to the defendant's criminal act" to "a special or unusual degree, to an extent greater than in other cases" (ibid.), the trial court engaged in precisely the type of judicial factfinding that is prohibited by Apprendi supra, 530 U.S. 466, 120 S.Ct. 2348, Blakely, supra, 542 U.S. 296, 124 S.Ct. 2531, and Cunningham, supra, 127 S.Ct. 856. In either event, the vulnerable victim finding cannot serve as a basis for imposing the upper term.

3. Additional Errors in Imposing the Upper Terms
We also note that the trial court appears to have used the fact of the commission of the offense itself as an aggravating factor in at least two instances in violation of California sentencing law. First, in concluding that the offense involved great bodily injury, the trial court said, "[A]ny act, I believe, of rape involves a great violence." Second, to explain its finding that there was violent conduct indicating a great danger to society, the court observed, "Having sex against someone's will, whether it's used [sic] by violence or restraint or through the use of an intoxicant so the person is unconscious or not conscious, what occurs is what I consider to be violent conduct which indicates a serious danger to society." The trial court's use of the fact of the offense itself as an aggravator is impermissible. A factor in aggravation must have the effect of making a crime "`"distinctively worse than the ordinary"'" (People v. Webber (1991) 228 Cal.App.3d 1146, 1169, 279 Cal. Rptr. 437), and a fact that is an element of a crime or that is essential to a jury's determination of guilt may not be used to impose the upper term. (Cunningham, supra, 127 S.Ct. at p. 868; see also Cal. Rules of Court, rule 4.420(d).)

4. Harmless Error Analysis
The failure to submit a sentencing factor to the jury is subject to harmless error analysis (Washington v. Recuenco (2006) 548 U.S. ___, 126 S.Ct. 2546, 2551-2553, 165 L.Ed.2d 466) under the standard set forth in Chapman v. California (1967) 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705. (People v. Sengpadychith (2001) 26 Cal.4th 316, 327, 109 Cal.Rptr.2d 851, 27 P.3d 739 [Apprendi error evaluated under Chapman standard]). We reject the Attorney General's position that the Apprendi/Blakely/Cunningham error was harmless beyond a reasonable doubt because if the aggravating factors had been submitted to the jury, it unquestionably would have found each of them true beyond a reasonable doubt. While a jury reasonably could have found aggravating factors true beyond a reasonable doubt on the evidence presented to the trial court, we cannot conclude beyond a reasonable doubt that a jury would have done so. Accordingly, we cannot say that the constitutional error was harmless, and the upper term sentences on counts 10, 13, and 14 must be modified. (See Section VI.D., post.)

C. Consecutive Sentencing under Penal Code Section 667.6, Subdivision (d)
On counts 13 and 14, the two counts of rape by intoxication, anesthesia, or controlled substance (§ 261, subd. (a)(3)), the trial court imposed consecutive sentences based on section 667.6, subdivision (d). The court stated that if a reviewing court were to conclude that the trial court was not required by section 667.6, subdivision (d) to impose consecutive sentences *297 on counts 13 and 14, it would have chosen to impose consecutive sentences nonetheless under section 667.6, subdivision (c) because the aggravating factors outweighed the mitigating factors. Diaz claims that the analysis set forth in Apprendi supra, 530 U.S. 466, 120 S.Ct. 2348, Blakely, supra, 542 U.S. 296, 124 S.Ct. 2531, and Cunningham, supra, 127 S.Ct. 856 applies with equal force to consecutive sentencing and precludes the trial court from imposing consecutive sentences on counts 13 and 14 in the absence of his admission or a factual finding by a jury beyond a reasonable doubt that the crimes were committed on separate occasions. We cannot agree.
Section 667.6, subdivision (d) mandates full consecutive sentences for certain sexual crimes committed against a single victim on separate occasions. "In determining whether crimes against a single victim were committed on separate occasions under this subdivision, the court shall consider whether, between the commission of one sex crime and another, the defendant had a reasonable opportunity to reflect upon his or her actions and nevertheless resumed sexually assaultive behavior. Neither the duration of time between crimes, nor whether or not the defendant lost or abandoned his or her opportunity to attack, shall be, in and of itself, determinative on the issue of whether the crimes in question occurred on separate occasions." (§ 667.6, subd. (d).)
The trial court made the requisite finding of separate occasions under section 667.6, subdivision (d): "In regards to the issue of consecutive sentences, I've looked at that tape more times than I want to, and I agree that there are numerous acts. In fact, I believe this case was undercharged, probably for good tactical reasons. But given the number of offenses that occurred and events that occurred in between, it's hard to describe how many times there was a break in the events which would have given the defendant time to reflect on what he was doing and perhaps stop. [¶] There were points where the victim said `Ow' or `You're hurting me,' `Stop,' or moved his hand away from her private parts or pushed him away, and things sort of stopped at that moment. I remember thinking, when I watched the tape, that, well, it's over now. But then he continued. There were clearly points in time where she indicated that she was not participating in this behavior andin this activity, and he continued. [¶] He also took the time to focus the camera and reposition the camera as if he was a director in a movie. And at some point as I indicated he grabbed her and moved dragged her across the bed. To me that was particularly striking, the way she was moved, as if she was a piece of meat, and at that time there's evidence there's a total lack of recognition of humanity. [¶] As such, I'm finding that these two crimes consisted of separate occasions, and, therefore, I'm going to impose full, separate, and consecutive term[s] of eight years for counts 13 and 14."
In the turbulent wake of Apprendi supra, 530 U.S. 466, 120 S.Ct. 2348, Blakely, supra, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403, and Cunningham, supra, 127 S.Ct. 856, section 667.6, subdivision (d) immediately raises a Sixth Amendment red flag: Clearly this provision requires the trial court to make factual findings, and just as clearly, the question of whether the crimes were committed on separate occasions was not submitted to the jury here for a determination beyond a reasonable doubt. Although section 667.6, subdivision (d) does require judicial factfinding, because that fact-finding did not increase Diaz's statutory maximum sentence we do not find Apprendi/Blakely/Cunningham *298 error in the imposition of full consecutive sentences on counts 13 and 14.[6]
As discussed above, the Apprendi/Blakely/Cunningham touchstone is that "`[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" (Apprendi, supra, 530 U.S. at p. 490, 120 S.Ct. 2348.) The starting point for all Apprendi/Blakely/Cunningham cases is the statutory maximum sentence, the maximum sentence to which the defendant may be sentenced based on the facts reflected in jury's verdict or admitted by the defendant. (Blakely, supra, 542 U.S. at pp. 303-304, 124 S.Ct. 2531 [statutory maximum sentence is the as "the maximum [t]he [trial judge] may impose without any additional findings"].)
Based on the facts in the verdict alone, without the additional judicial determination that the acts occurred on separate occasions, Diaz could have been sentenced on counts 13 and 14 under one of two statutory schemes: section 1170.1 (California's Determinate Sentencing Law) or section 667.6, subdivision (c), which is a discretionary alternative sentencing scheme for certain sexual offenses. Under section 667.6, subdivision (c), the trial court had the discretion to impose full consecutive sentences "whether or not the crimes were committed during a single transaction." (Former § 667.6, subd. (c)[7].) If the trial court elected to proceed under section 667.6, subdivision (c), it was required to state the reason for its discretionary sentencing choice (Cal. Rules of Court, rule 4.406(b)(6)), but this did not create a presumption of or legal entitlement to sentencing under section 1170.1. (See People v. Reeder (1984) 152 Cal.App.3d 900, 923, 200 Cal.Rptr. 479; People v. Hernandez (2007) 147 Cal.App.4th 1266, 1271, 54 Cal. Rptr.3d 912.)
A comparison of the Rules of Court governing the selection of full consecutive sentences, under section 667.6, subdivision (c) with the rules for imposing upper term sentences immediately demonstrates the vast difference between the procedures governing the decision to impose an upper term and the decision to impose sentence under section 667.6, subdivision (c). As the court in Cunningham, supra, 127 S.Ct. at page 862 observed, California's Rules of Court specify that the determination of aggravating factors is entirely about finding facts: "`Circumstances in aggravation,' as crisply defined by the Judicial Council, means `facts which justify the imposition of the upper prison term.' Rule 4.405(d) (emphasis added). Facts aggravating an offense, the Rules instruct, `shall be established by a preponderance of the evidence,' Rule 4.420(b) [footnote], and must be `stated orally on the record.' Rule 4.420(e)." Because of this emphasis on facts in the context of aggravators, a majority of the Supreme Court rejected Justice Alito's argument in dissent that policy judgments or subjective beliefs of the trial judge could be aggravating circumstances: "California's Rules ... constantly refer to `facts.' As just noted, the *299 Rules define `circumstances in aggravation' as 'facts which justify the imposition of the upper prison term.' Rule 4.405(d)(emphasis added). [Footnote]. And `circumstances in aggravation,' the Rules unambiguously declare, `shall be established by a preponderance of the evidence,' Rule 4.420(b), a clear factfinding directive to which there is no exception." (Id. at pp. 862-863.)
In sharp contrast are the rules governing the trial court's choice of proceeding under section 667.6, subdivision (c) or section 1170.1 for qualifying offenses. The decision to sentence to full consecutive sentences under section 667.6, subdivision (c) is one that "generally require[s] a statement of a reason." (Cal. Rules of Court, rule 4.406(b) & 4.406(b)(6).) The responsibility to state a reason means that the trial court shall or must[8] "state in simple language the primary factor or factors that support the exercise of discretion." (Cal. Rules of Court, rule 4.406(a).) Rule 4.406, governing the statement of reasons for sentence choices, never uses the words "fact" or "finding," and does not impose a standard of proof. Unlike the series of rules governing the determination of aggravating facts, there are no other rules in the Rules of Court setting forth standards by which to determine facts or factors for the purposes of the decision whether to impose a full consecutive sentence under section 667.6, subdivision (c). The decision to impose full consecutive sentences under section 667.6, subdivision (c), therefore, is wholly discretionary and requires no judicial factfinding beyond the facts contained in the verdict itself, which here established that the trial court could sentence Diaz under section 667.6, subdivision (c) or section 1170.1.
Because the trial court had the discretion under section 667.6, subdivision (c) to sentence Diaz to full consecutive sentences based on the facts encompassed by the verdict alonewithout making any additional findings of factthe statutory maximum Diaz faced for purposes of Apprendi, supra, 530 U.S. 466, 120 S.Ct. 2348, Blakely, supra, 542 U.S. 296, 124 S.Ct. 2531, and Cunningham, supra, 127 S.Ct. 856, was a full consecutive term on counts 13 and 14. (People v. Groves (2003) 107 Cal.App.4th 1227, 1231, 132 Cal.Rptr.2d 744.) Therefore, when the trial court made a finding of separate occasions finding under section 667.6, subdivision (d), it did not "increase! ] the penalty for [the] crime[s] beyond the prescribed statutory maximum." (Apprendi supra, 530 U.S. at p. 490, 120 S.Ct. 2348.) As the court's factual finding did not raise Diaz's potential punishment beyond that to which he was already subject based on the verdict alone, the court's failure to submit the question of separate occasions to the jury did not violate the Sixth Amendment. (Ibid.)

D. Proceedings in Light of Sentencing Error
We asked the parties to submit additional briefing on the question of what remedial orders this court should make in the event that we concluded that Diaz's sentence violated the Sixth Amendment. Diaz argues that because the upper term sentences here were imposed based on factors that were impermissible under Cunningham, supra, 127 S.Ct. 856, our options are limited to imposing midterm sentences ourselves or remanding for the imposition of midterm or low term sentences. The Attorney General contends that if we conclude that none of the aggravating factors were constitutionally valid, *300 we may remand the matter for a new sentencing hearing at which the trial court could empanel a new jury to make aggravating factor findings in compliance with Cunningham, supra, 127 S.Ct. 856.
The Attorney General acknowledges that there is "no explicit statutory authorization for a procedure in which a jury would find aggravating circumstances in support of an upper term," but argues that "this certainly does not render such a procedure unlawful." He argues that "[i]n the absence of specific statutory guidance, the court retains the inherent power and duty to effect an appropriate procedure to carry out the mandate of the law and to preserve the orderly administration of justice."
Although we are well aware that there exist "inherent powers of the courts [that] are derived from the Constitution (art. VI, § 1 [reserving judicial power to courts]; [citations omitted]), and are not confined by or dependent on statute" (Walker v. Superior Court (1991) 53 Cal.3d 257, 267, 279 Cal.Rptr. 576, 807 P.2d 418), we are not convinced that those inherent authorities extend or should be conscripted into supporting the judicial creation of an entirely unprecedented second-chance sentencing trial/rehearing system for defendants whose sentences have been invalidated on appeal due to Apprendi/Blakely/Cunningham error.[9] The magnitude of such a judicial concoction would be immense; it would involve co-opting a wide variety of criminal procedures already prescribed by statute and shoehorning them into a new sentencing system unique to one particular set of criminal defendants. To exercise judicial authority in this manner would require devising, inter alia, systems for charging and pleading aggravating factorsafter a trial on the information has already occurredin such a manner as to give adequate notice of the alleged aggravating factors so as to satisfy due process requirements for criminal defendants. "Indeed, because a fact `other than a prior conviction' used to impose the upper term must first be submitted to a jury and proved beyond a reasonable doubt, unless the accused waives the right to jury trial (Cunningham, supra, ___ U.S. at p. ___, 127 S.Ct. at p. 864, 166 L.Ed.2d at p. 873), it now appears that to satisfy procedural due process, an aggravating fact must be charged in the accusatory pleading. (See Apprendi v. New Jersey (2000) 530 U.S. 466, 476, 494, fn. 19, 120 S.Ct. 2348, 2355, 2365, fn. 19, 147 L.Ed.2d 435, 446, 457, fn. 19; Jones v. United States (1999) 526 U.S. 227, 243, fn. 6, 119 S.Ct. 1215, 1224, fn. 6, 143 L.Ed.2d 311, 326, fn. 6 [`any fact (other than prior conviction) that increases the maximum *301 penalty for a crime must be charged in an indictment, submitted to a jury, and prove[d] beyond a reasonable doubt' (italics added) ].)" (Barragan v. Superior Court (2007) 148 Cal.App.4th 1478, 1483, 56 Cal.Rptr.3d 660, 663 [permitting, in a just-begun criminal trial, the amendment of the information to allege aggravating factors].) This task would be made all the more complicated by the fact that the California Rules of Court explicitly provide that the list of aggravating factors in California Rules of Court, rule 4.420 is non-exhaustive. (Cal. Rules of Court, rule 4.408 ["The enumeration in these rules of some criteria for the making of discretionary sentencing decisions does not prohibit the application of additional criteria reasonably related to the decision being made"].)
After resolving the constitutional and practical issues presented by charging an already-convicted and already-sentenced criminal defendant with aggravating factors, we would have to judicially extend the laws concerning discovery in criminal cases to press that statutory creation into one that would offer and permit appropriate post-trial discovery with respect to the charged aggravating factors. As there presently exists no statutory authority for selecting noncapital sentencing juries, we would have to create a system for selecting a jury panel for a post-appeal sentencing trial on aggravating facts. We would need a new system of evidentiary rules to address what evidence from the trial could be admitted at this subsequent sentencing proceedinga system that would have to take into account the fact that the defendant was forced to elect whether to testify at his or her first trial without any knowledge that a second jury would later be empaneled to consider that testimony for the purposes of evaluating aggravating factors. New jury instructions and new verdict forms would have to be developed. We are doubtful that the quasi-legislative creation of procedures for a wholly new sentencing "trial" on aggravating factors for this single group of criminal defendants who have already been charged, tried, convicted and sentenced, but whose sentences are vacated on Apprendi/Blakely/Cunningham, grounds, would adequately protect their constitutional rights, preserve due process, and avoid issues of double jeopardy.
Similarly militating against such a judicial invention is the fact that California courts have long declined to formulate new sentencing schemes as long as a valid sentencing option survives the declaration that a criminal punishment prescribed by statute is unconstitutional. In Rockwell v. Superior Court (1976) 18 Cal.3d 420, 445, 134 Cal.Rptr. 650, 556 P.2d 1101, the California Supreme Court held unconstitutional the procedure by which California imposed the death penalty on the grounds that the procedure failed to authorize the consideration of mitigating factors and in effect made the death penalty mandatory if enumerated special circumstances were present. The People argued that the Supreme Court could salvage the death penalty system by construing some statutory language as permissive rather than mandatory and by "prescrib[ing] procedures that will satisfy the requirements of the Eighth and Fourteenth Amendments." (Ibid.) The Supreme Court refused, observing that its conclusion that the statutes governing the imposition of the death penalty were unconstitutional left intact a valid punishment for those convicted of first degree murder: life imprisonment. (Ibid.; see also Learning v. Municipal Court (1974) 12 Cal.3d 813, 117 Cal.Rptr. 657, 528 P.2d 745 [declaring unconstitutional penal provisions for a second conviction for indecent exposure and leaving the statute to be read in conjunction with section 18, which *302 sets forth the term of imprisonment for felonies where no term is elsewhere specified].) As the Supreme Court explained in Rockwell, this approach is preferable to a wholesale rewriting of Penal Code provisions because "[w]ere this court to attempt to devise the necessary procedures and criteria we would not only invade the legislative province, but would also be in the position of having to pass objectively on the constitutionality of procedures of our own design." (Rockwell, at p. 445, 134 Cal.Rptr. 650, 556 P.2d 1101.) Concurring separately, Justice Clark emphasized that the Supreme Court properly refused to "save the law by rewriting it," because "the courts must not, in this case or any other, act as a super-legislature." (Id. at p. 449, 134 Cal.Rptr. 650, 556 P.2d 1101.)
Finally, we are all the more reluctant to impose a new judicially-created sentencing trial scheme for previously-convicted and already-sentenced defendants whose sentences are voided on Apprendi/Blakely/Cunningham grounds in light of the Legislature's response to Cunningham, supra, 127 S.Ct. 856. In urgency legislation signed by the Governor on March 30, 2007, the Legislature amended section 1170, subdivision (b) to eliminate the statutory presumption for the middle term. Previous section 1170, subdivision (b), as it was in effect at the time of Diaz's trial, provided that when an offense is punishable by one of three statutory terms, "the court shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of the crime." Rather than invent a system for charging and trying aggravating factors by jury under the reasonable doubt standard, the Legislature simply removed the statutory presumption to the middle term so that the section now reads, "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court." (§ 1170, subd. (b), as amended by Stats. 2007, ch. 3, § 2 (effective Mar. 30, 2007).)
The amendments made by the Legislature to the Determinate Sentencing Law in response to Cunningham, supra, 127 S.Ct. 856, demonstrate its view that the appropriate immediate method to remedy the constitutional defects in the Determinate Sentencing Law is not the creation of new procedures to submit aggravating factors to juries for findings beyond a reasonable doubt within the current sentencing scheme. Given the Legislature's determination, we think it singularly inappropriate for this court to impose on the trial courts the burden of implementing a judicially-designed aggravating factor trial system that would be unique to those defendants whose sentences were vacated on appeal due to Apprendi/Blakely/Cunningham error.
We conclude that there is no need to remand the matter to the trial court. If we were to remand the matter for a new sentencing hearing the trial court would lack the discretion to impose an upper term sentence, as no aggravating factors were admitted by Diaz or found true by the jury beyond a reasonable doubt, nor did Diaz have any prior convictions. The trial court, therefore, could only consider whether to impose midterm sentences or lower term sentences on counts 10, 13, and 14. Having reviewed the evidence and considered the trial court's comments at sentencing, we are convinced beyond a reasonable doubt that even if the trial court had not considered constitutionally improper aggravating factors, under no circumstances would the trial court have exercised its sentencing discretion to impose low term sentences on counts 10, 13, and 14. Accordingly, we modify the judgment to impose the middle term of six years on counts 10, 13, and 14, for a decrease *303 of six years in Diaz's aggregate prison term.

DISPOSITION
The convictions are affirmed. The judgment is modified to impose the middle term of six years on counts 10, 13, 14. The clerk of the superior court is ordered to prepare a new abstract of judgment reflecting the imposition of six-year terms on counts 10, 13, and 14. In preparing the abstract of judgment, the clerk should ensure that the sentences for counts 13 and 14 reflect that the six-year midterm sentences are full terms to be served consecutively, not consecutive sentences of 1/3 the middle term as they were previously and incorrectly designated. The clerk of the superior court shall forward a copy of the new abstract of judgment to the Department of Corrections.
JOHNSON, J., concurs.
PERLUSS, P.J., Concurring and Dissenting.
I fully agree with parts 1 through 5 of the majority opinion. With respect to part 6, dealing with sentencing issues under Apprendi v. New Jersey (2000) 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 Apprendi), Blakely v. Washington (2004) 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (Blakely) and Cunningham v. California (2007) 549 U.S. ___, 127 S.Ct. 856, 166 L.Ed.2d 856 (Cunningham), I also agree (1) Mark Diaz did not forfeit his argument the trial court's imposition of a sentence based in part on its own factual findings concerning aggravating circumstances violated his right to a jury trial guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution by failing to object on constitutional grounds in the trial court; (2) the trial court's imposition of upper term sentences on counts 10, 13 and 14 based on its own factual findings of aggravating circumstances, none of which involved a prior conviction (see Cunningham, supra, 127 S.Ct. at p. 868; Almendarez-Torres v. United States (1998) 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350)[10] or even more broadly the defendant's recidivism (see People v. Thomas (2001) 91 Cal.App.4th 212, 221-222, 110 Cal.Rptr.2d 571 ["courts have held that no jury trial right exists on matters involving the more broadly framed issue of `recidivism' "]; see also People v. McGee (2006) 38 Cal.4th 682, 706-707, 42 Cal.Rptr.3d 899, 133 P.3d 1054),[11] violated Mark Diaz's constitutional right to a jury trial; and (3) *304 imposition of consecutive sentences under Penal Code section 667.6, subdivisions (c) and (d), does not constitute Blakely/Cunningham error. I respectfully disagree, however, with the majority's conclusion the error in imposing upper term sentences was not harmless.[12]
As the majority explains, the trial court's error in making the factual findings upon which it based its decision to impose the upper term sentences, rather than submitting those issues to the jury, is subject to harmless error analysis. (Washington v. Recuenco (2006) 548 U.S. ___, 126 S.Ct. 2546, 165 L.Ed.2d 466 [Apprendi/Blakely error not "structural error" requiring automatic reversal]; see People v. Sengpadychith (2001) 26 Cal.4th 316, 327, 109 Cal. Rptr.2d 851, 27 P.3d 739 [Apprendi error reviewable under the harmless error standard of Chapman v. California (1967) 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (Chapman)]; People v. Davis (2005) 36 Cal.4th 510, 564, 31 Cal.Rptr.3d 96, 115 P.3d 417 [same].) An error may be found harmless under Chapman only if, on appeal, the Attorney General demonstrates beyond a reasonable doubt the result would have been the same notwithstanding the error. (E.g., Sengpadychith, at p. 320, 109 Cal.Rptr.2d 851, 27 P.3d 739.)
I am persuaded on this record the Blakely/Cunningham error was harmless. Although the trial court identified four circumstances or factors in aggravation, it expressly stated any one of those factors standing alone would outweigh the mitigating factors (primarily Diaz's lack of prior criminal record) and justify the upper-term, consecutive sentences imposed.[13] Accordingly, although I agree with the majority that several of the circumstances discussed by the court appear to duplicate elements of Diaz's crimes and, therefore, were not properly considered as aggravating factors independent of any Blakely/Cunningham issue (see Cal. Rules of Court, rule 4.420(d)), the proper focus of the required harmless error analysis is whether we are persuaded the jury would have found true beyond a reasonable doubt any one of the factors upon which the court based its aggravated sentence. (See People v. Cleveland (2001) 87 Cal.App.4th 263, 271, 104 Cal.Rptr.2d 641 [finding any Apprendi error harmless because "[w]e have no doubt a jury would have reached the same conclusion under the reasonable doubt standard"].)
The first aggravating circumstance identified by the court was that Diaz's repeated sexual assaults on his semi-conscious victim disclosed a high degree of cruelty, viciousness or callousness. (See Cal. Rules of Court, rule 4.421(a)(1) ["[t]he crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, *305 viciousness, or callousness"].)[14] Diaz's conduct toward his incapacitated victim upon which this assessment was based was essentially undisputed: It was captured on the videotape Diaz made of his own assault; Diaz himself did not deny the tape accurately reflected what had occurred, asserting only that the victim had consented to his conductan interpretation of the visual record the jury implicitly rejected in finding that the victim was prevented from resisting Diaz by intoxication and that Diaz, in turn, was guilty of two counts of rape by use of drugs, two counts of oral copulation by anesthesia or controlled substance and unlawful sexual penetration by a foreign object.
Accepting the jury's conclusion the victim lacked the capacity to consent to Diaz's assaultive behavior, I have no doubt that the same jury would have also concluded Diaz's actions, including his decision to record them on videotape, disclosed a high degree of cruelty or callousness. In addition to the five separate sex crimes for which he was convicted, as well as a number of further uncharged offenses,[15] the tape shows Diaz repeatedly slapping the victim, who largely lies limp, motionless and moaning on the bed, but who occasionally rouses herself to cry out "ow," "you're hurting me," "no," "don't do it" and "stop." It also depicts Diaz dragging the victim across the bed and positioning and repositioning her body for the camera"as if he was a director in a movie," in the words of the trial judge.[16] Applying Chapman's heightened beyond-a-reasonable-doubt standard for assessing harmless error in cases involving violation of a defendant's federal constitutional rights, from this record I am confident the jury would necessarily have found, beyond a reasonable doubt, the existence of this aggravating factor if the issue had been submitted to it. (See People v. Cleveland, supra, 87 Cal. App.4th at p. 271, 104 Cal.Rptr.2d 641.) Any sentencing error, therefore, was harmless.
NOTES
[*] Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of parts I through V.
[1] Unless otherwise indicated, all further statutory references are to the Penal Code.
[**] See footnote *, ante.
[3] At sentencing, the court misspoke and repeated section 667.6, subdivision "(d)" as its alternate authority, but it is clear from the context that the court meant to refer to section 667.6, subdivision (c).
[4] The California Supreme Court had concluded otherwise in Black, supra, 35 Cal.4th 1238, 29 Cal.Rptr.3d 740, 113 P.3d 534. The United States Supreme Court disapproved Black in Cunningham and later vacated the judgment and remanded the matter to the California Supreme Court, where it is now pending. (Black, supra, 35 Cal.4th 1238, 29 Cal.Rptr.3d 740, 113 P.3d 534, cert, granted, judg. vacated and cause remanded for further consideration in light of Cunningham, supra, 127 S.Ct. 856 sub nom. Black v. California (2007) 549 U.S. ___, 127 S.Ct. 1210, 167 L.Ed.2d 36.)
[5] According to the probation report, Diaz has no prior criminal convictions or juvenile adjudications.
[6] The error in imposing upper term sentences on these counts has already been discussed ante, in Section VI.B.
[7] Section 667.6, subdivision (c) has since been amended on two occasions but remains similar in effect. The statute now provides, "In lieu of the term provided in Section 1170.1, a full, separate, and consecutive term may be imposed for each violation of an offense specified in subdivision (e) if the crimes involve the same victim on the same occasion. A term may be imposed consecutively pursuant to this subdivision if a person is convicted of at least one offense specified in subdivision (e)." (§ 667.6, subd. (c)).
[8] At all times relevant to this case, the rule used the term "shall." Rule 4.406 was subsequently amended and now uses the word "must" instead."
[9] We do not question that in the absence of a constitutionally legitimate sentencing procedure the courts may and, indeed, must employ their inherent powers to ensure that properly convicted criminal defendants are sentenced to terms of imprisonment. "Courts have the inherent power to create new forms of procedure in particular pending cases. `The ... power arises from necessity where, in the absence of any previously established procedural rule, rights would be lost or the court would be unable to function.' [Citation.]" (James H. v. Superior Court (1978) 77 Cal.App.3d 169, 175, 143 Cal.Rptr. 398.) This is not, however, an instance in which the court would be unable to function, rights would be lost, or convicted defendants would go without prison sentences if we do not invent new procedures. The Supreme Court did not strike down California's entire sentencing scheme, only the procedure for imposing high term sentences based on aggravating facts, other than prior convictions, found by a judge rather than a jury and by a preponderance of the evidence standard. What is at stake here is not the continued operation of our trial courts, it is the question of whether one specific group of criminal defendants those sentenced to upper term sentences in violation of the Sixth Amendment where the constitutional error is not harmlesswill receive high term or midterm sentences.
[10] The question whether there is a violation of the defendant's rights under Cunningham if the defendant is eligible for the upper term based on a single aggravating factor established by means that satisfy the governing Sixth Amendment authorities even if the trial judge relies on other aggravating factors not established by such means in exercising his or her discretion to impose an upper term sentence is currently pending before the California Supreme Court. (E.g., People v. Towne, review granted July 14, 2004, S125677, supp. briefing ordered, Feb. 7, 2007.)
[11] Whether the prior conviction exception of Almendarez-Torres v. United States, supra, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350, as set forth in Cunningham, is properly interpreted to apply not only to the fact of a prior conviction but also to other issues relating to the defendant's recidivism, including the defendant's status as a probationer or parolee at the time the current offense was committed and the existence of "numerous" or increasingly serious prior convictions is also currently pending before the California Supreme Court. (People v. Towne, supra, S125677, supp. briefing ordered, Feb. 7, 2007 [parties to address the following issue, among others, "Do Cunningham v. California, supra, and Almendarez-Torres v. United States (1998) 523 U.S. 224, 239-247 [118 S.Ct. 1219, 140 L.Ed.2d 350], permit the trial judge to sentence defendant to the upper term based on any or all of the following aggravating factors, without submitting them to a jury: the defendant's prior convictions as an adult are numerous and of increasing seriousness; the defendant has served a prior prison term; the defendant was on parole when the crime was committed; the defendant's prior performance on probation or parole was unsatisfactory (California Rules of Court, Rule 4.421, subds. (b)(2)-(b)(5))?"]; People v. Hernandez, review granted Feb. 7, 2007, S148974; People v. Pardo, review granted Feb. 7, 2007, S148914.)
[12] Because I would affirm the judgment in its entirety, I express no view on the majority's analysis whether a remand for resentencing is appropriate and, if so, what procedures may be used by the trial court on remand.
[13] The court stated, "I want to make the record clear that, as for the factors that I found in aggravation, each factor alone is so strong that I would find that each factor alone would separatelyis strong enough to out as a single factor or the factors in mitigation, let alone those facts in aggravation in their entirety. Looking at the four different factors in aggravation that I found, I found each one is strong enough by themselves to outweigh the factors in mitigation, let alone the four factors in aggravation when viewed together."
[14] As the majority correctly notes, the trial court expressed its view that "any act, I believe, of rape involves a great violence," but it specifically found as an aggravating circumstance not that Diaz's crimes involved great violence or great bodily harm, but that his acts disclosed a high degree of cruelty, viciousness or callousness: "Specifically, I'm finding it involved a high degree of cruelty, viciousness and [sic ] callousness. As I said, she was treated in a manner which completely denied her humanity
[15] The trial court observed during the sentencing hearing, "I've looked at that tape more times than I want to, and I agree that there are numerous acts. In fact, I believe this case was undercharged, probably for good tactical reasons."
[16] In its findings the viciousness or callousness of Diaz's conduct while committing the crimes was an aggravating factor, the trial court stated, "He also took the time to focus the camera and reposition the camera as if he was a director in a movie. And at some points as I indicated he grabbed her and moved-dragged her across the bed. To me that was particularly striking, the way she was moved, as if she was a piece of meat, and at that time there's evidence there's a total lack of recognition of humanity."