[No. D049901. Fourth Dist., Div. One. June 26, 2007.]

In re VALERIE A. et al., Persons Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,
Plaintiff and Respondent, v.
ANTONIA M., Defendant and Appellant.

988

---

**COUNSEL**

Monica Vogelmann for Defendant and Appellant.

John J. Sansone, County Counsel, John E. Philips, Chief Deputy County Counsel, and J. Jeffrey Bitticks, Deputy County Counsel, for Plaintiff and Respondent.

Suzanne F. Evans for Minors.

---

**OPINION**

**IRION, J.**—Antonia M. appeals from judgments terminating parental rights to her children, Valerie A. and Victoria A., under Welfare and Institutions Code section 366.26.[1] She contends she was denied a fair opportunity to litigate the sibling relationship exception to termination of parental rights under section 366.26, subdivision (c)(1)(E). Relying on case law interpreting the beneficial parent-child relationship exception under section 366.26, subdivision (c)(1)(A), Antonia asserts the court erred when it did not make appropriate orders for sibling visitation and contact, thereby irreparably eroding the

---

[1] Unless specified, statutory references are to the Welfare and Institutions Code.

children's bonds to their older sibling. She posits that these and other defects in the proceedings undermined the statutory protections provided by the dependency scheme and violated her due process rights. We are not persuaded by Antonia's claims, and affirm the judgments.

## FACTUAL AND PROCEDURAL BACKGROUND

Valerie and Victoria (the children) were born in March 2003. In August 2004 the San Diego County Health and Human Services Agency (the Agency) removed them from the custody of their mother, Antonia M., because of her chronic substance abuse.[2] In an earlier dependency proceeding, the juvenile court terminated Antonia's parental rights to the children's older half sibling, Adriana G., who was adopted in 2003 by her maternal grandmother (grandmother).

The Agency placed Valerie and Victoria with grandmother. Adriana, then eight years old, also lived in the household. Grandmother stopped working outside the home to care for the toddlers. In March 2005 she told the Agency she could no longer care for the children full time. Grandmother suggested the Agency place the children with J.D., the mother of her teenage grandson.

Initially, the children had overnight visits on weekends with grandmother and Adriana. However, family tensions surfaced when grandmother wanted the children returned to her care and J.D. expressed a desire to adopt them. Grandmother told the social worker, "[J.D.] is going to get it some day and I will make sure of it." The social worker suspended grandmother's unsupervised visitation.

Adriana missed her sisters. Antonia asked the Agency to change her visitation schedule to allow Adriana to be present. The social worker accommodated her request, and Adriana saw her sisters approximately twice a month.

The court terminated reunification services at the six-month review hearing. It did not make findings or orders as to sibling visitation. However, Adriana continued to see Valerie and Victoria during their visits with Antonia.

At the December 2005 permanency planning hearing, the Agency recommended adoption. Antonia asserted termination of parental rights would be detrimental to the children because of the parent-child bond and their sibling

---

[2] The children's father did not participate in the dependency proceedings.

relationships with Adriana. The court granted the Agency's motion to strike any reference to Adriana as the children's sibling. It reasoned Adriana was not the children's sibling because she had been adopted. The court terminated parental rights. Antonia appealed. (*In re Valerie A.* (2006) 139 Cal.App.4th 1519 [43 Cal.Rptr.3d 734] (*Valerie A.*).)

On May 30, 2006, this court held that Adriana was the children's sibling within the statutory definition of that term, and reversed the judgment terminating parental rights. The case was remanded to the trial court with directions to conduct a new permanency planning hearing under section 366.26 and to permit the presentation of evidence relevant to the issue of the sibling relationship between the children and Adriana. (*Valerie A., supra*, 139 Cal.App.4th at pp. 1524–1525.)

Remittitur issued on August 22, 2006. Antonia filed a motion for sibling visitation and asked the court to allow a neutral monitor to observe the siblings' interactions. Antonia also asked the court to appoint a guardian ad litem or counsel for Adriana to allow her to assert her interests in her sibling relationships. (§ 388, subd. (b).) On September 20, the court ordered sibling visitation to occur every other week for two hours, monitored by the social worker, and authorized a bonding study of the children and Adriana. The court denied without prejudice Antonia's request to appoint a guardian ad litem for Adriana.

Adriana, Valerie and Victoria had visits on September 22, October 20, and during a bonding study on November 3, 2006. Visits were suspended after the November 3 visit. After that visit, Antonia's sister, Blanca, who had driven Adriana to the visit, followed J.D. in her car. J.D. returned to the visitation site, where the social worker was monitoring the situation. J.D. saw another maternal relative, Alicia, speak to a man in a truck and read J.D.'s automobile license plate number to him. When J.D. confronted Alicia, Alicia threatened to "kick [J.D.'s] ass." The social worker called the police. An officer escorted J.D. and the children to their car. J.D. reported that on her drive home, someone driving an older Mercedes tried to run her car off the road. When advised of the situation, the court found that sibling visitation would be detrimental to Valerie and Victoria, and issued a temporary restraining order against Blanca and Alicia.

The section 366.26 hearing was held over several days in November 2006. Based on her observations of the recent visits, the social worker opined that neither Valerie nor Victoria had a sibling bond with Adriana. The social worker believed severing the children's relationship with Adriana would not

be detrimental to them because the lack of sibling visitation during the last 10 months had not affected them adversely. J.D. originally had planned to allow Adriana to visit the children, but changed her mind because of the relatives' disparaging comments and threatening behaviors. She might consider allowing future contact. The social worker testified the relatives' behavior jeopardized the children's safety, and continued contact with Adriana was not in their best interests for that reason.

Antonia recalled that when the children were born, she lived with grandmother and Adriana for one month. She then moved two blocks away. Adriana saw the children almost every day until grandmother moved in December 2003, and then she saw them on weekends. Adriana helped care for the children. She would feed them, change their diapers and help put them to sleep.

Grandmother testified Valerie and Victoria always wanted to be with Adriana. They would climb on her, and one twin or the other would sleep with her at night. The children followed Adriana wherever she went. Even when they played next door with children their own age, they would stand on the fence and call, "Ana, Ana." When visits with the children stopped, Adriana became depressed and required therapy, which was ongoing.

Sonia, grandmother's next-door neighbor, testified Valerie and Victoria constantly wanted to be with Adriana. They would stand at their door and call for her when she went outside. The siblings had mutual, loving relationships. Adriana would cajole her sisters to eat and make them laugh.

In her testimony, Adriana said she was happy to see her sisters. She missed them. At the first two visits Adriana was upset because Valerie and Victoria did not appear to recognize her. At the third visit the girls ran to her and hugged her when she arrived. They looked happy to see her. Adriana felt "really sad" after the visits ended because she loved her sisters and did not want to leave them. Adriana loved her sisters more than she loved anyone else.

Dr. Raymond Murphy observed the siblings' interactions in November 2005 and November 2006. In November 2005, he concluded "the sibling bond between the twins and . . . Adriana is of great significance and certainly indicates that these children have a meaningful and well developed relationship and attachment." When the children saw Adriana at Dr. Murphy's office in November 2006, they ran to her and hugged her. Adriana initiated most of the interactions during the visit, but the children looked to her for support,

help and affection. Dr. Murphy opined the children and Adriana shared a " 'relatively significant . . . and well-structured sibling bond.' "

The court found the children were adoptable and the sibling relationship did not outweigh the benefits of adoption. Based on the testimony of Adriana and the social worker, the court determined, from the children's point of view, there was "nothing unique" about their sibling relationships with Adriana. The court found the benefits of adoption outweighed the interference to the sibling relationships caused by termination of parental rights. The court determined sibling visitation was not in the best interests of the children and Adriana.

## DISCUSSION

## I

## THE SIBLING RELATIONSHIP EXCEPTION TO TERMINATION OF PARENTAL RIGHTS

"Adoption, where possible, is the permanent plan preferred by the Legislature." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 573 [32 Cal.Rptr.2d 535].) If the court finds a child is likely to be adopted if parental rights are terminated, it must select adoption as the permanent plan unless it finds termination of parental rights would be detrimental to the minor under one of the specified exceptions. (§ 366.26, subd. (c)(1).) The parent has the burden to show termination would be detrimental to the minor under one of those exceptions. (*In re Andrea R.* (1999) 75 Cal.App.4th 1093, 1108 [89 Cal.Rptr.2d 664].)

Section 366.26, subdivision (c)(1)(E), enacted in 2001, was designed to "encourage and maintain relationships between siblings where one or more become dependents of the juvenile court." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 705 (2001–2002 Reg. Sess.) as amended June 11, 2001.)[3]

---

[3] This legislation was part of a broader statutory scheme designed to protect and maintain a dependent child's relationships with his or her siblings. (See Stats. 2001, ch. 747; Stats. 2000, ch. 909; Stats. 1999, ch. 805; see also *In re Hector A.* (2005) 125 Cal.App.4th 783, 794 [23 Cal.Rptr.3d 104] ["Section 388, subdivision (b) is but one of the numerous additions that have been made to the Welfare and Institutions Code since 1992 recognizing the importance of sibling relationships to the psychological health of dependent children and of the need to preserve such relationships whenever possible. (E.g., §§ 358.1, subd. (d), 361.2, subd. (i), 362.1, 366.26, subd. (c)(1)(E), 16002; see generally, Schwartz, *Siblings Torn Apart No More* (2001) 32 McGeorge L.Rev. 704.) As the Legislature noted in amending section 388, 'By sprinkling language requiring consideration of the sibling relationship over the many statutes governing different stages of dependency proceedings, proponents hope that the goal of preserving and strengthening the child's family ties . . . will be fulfilled.' (Sen. Com. on

Section 366.26, subdivision (c)(1)(E) provides an exception to termination of parental rights when severing the sibling relationship would be detrimental to the dependent child. (*In re L. Y. L.* (2002) 101 Cal.App.4th 942, 952 [124 Cal.Rptr.2d 688].) The legislative history indicates the sibling relationship exception was added to " 'recognize[] the importance of maintaining and developing sibling relationships, and . . . ensure that appropriate consideration is given to this matter.' " (*In re Daisy D.* (2006) 144 Cal.App.4th 287, 292 [50 Cal.Rptr.3d 242], quoting Assem. Com. on Judiciary, Rep. on Assem. Bill No. 705 (2001–2002 Reg. Sess.) as amended Mar. 27, 2001, p. 5.)

To establish detriment under the section 366.26, subdivision (c)(1)(E) exception, sufficient to avoid termination of parental rights, the parent must show, by a preponderance of the evidence, "[t]here would be substantial interference with a child's sibling relationship, taking into consideration the nature and extent of the relationship, including, but not limited to, whether the child was raised with a sibling in the same home, whether the child shared significant common experiences or has existing close and strong bonds with a sibling, and whether ongoing contact is in the child's best interest, including the child's long-term emotional interest, as compared to the benefit of legal permanence through adoption." (*Ibid.*)

Before we discuss the main issue raised on appeal—whether Antonia was denied due process of law as a result of the deleterious effect of erroneous visitation orders on the children's bonds with their sister Adriana—we first consider the Agency's procedural objections, review the statutory framework for sibling visitation, and discuss Antonia's claims the trial court erred in fashioning sibling visitation orders.

## II

## PRELIMINARY ISSUES

Citing section 16002, subdivisions (b) and (e), and section 358.1, subdivision (d)(2), Antonia contends the statutory scheme of the California dependency system places an affirmative duty on the Agency and the court to protect the sibling relationship or to state for the record why the sibling relationship is not to be protected. Antonia asserts the trial court erred in fashioning visitation orders while the prior appeal was pending, at the postpermanency review hearing and after the case was remanded. She also

Judiciary, . . . [A]nalysis of Assem. Bill No. 1987 (1999–2000 Reg. Sess.) as amended May 16, 2000[, p. 7].)"].)

contends the court erred when it denied, without prejudice, her motion for the appointment of a guardian ad litem or counsel for Adriana.

The Agency contends the trial court did not abuse its discretion in fashioning or restricting sibling visitation at any time during the proceedings. It argues Antonia lacks standing to assert the visitation orders were erroneous, and that she forfeited the issue on appeal by failing to object to the lack of sibling visitation after December 2005. The Agency also contends Antonia does not have standing to raise the issue of the appointment of a guardian litem or counsel for Adriana. On the merits, the Agency asserts there is no statutory authority that requires the juvenile court to order sibling visitation after parental rights are terminated but before any provisions are made for postadoption sibling contact under section 366.29. It also contends there is no statutory authority that permits the juvenile court to appoint a guardian ad litem or counsel for a nondependent child seeking to assert his or her interests in a sibling relationship under section 388, subdivision (b).

A

*STANDING*

1. *Antonia Has Standing to Appeal the Section 366.26, Subdivision (c)(1)(E) Exception to Termination of Parental Rights*

 Antonia contends the lack of court-ordered sibling visitation unfairly infringed on her interests in litigating the exception to termination of parental rights under section 366.26, subdivision (c)(1)(E). "Generally, a parent who is an aggrieved party may appeal a judgment in a juvenile dependency matter. (*In re Frank L.* (2000) 81 Cal.App.4th 700, 703 [97 Cal.Rptr.2d 88].) To be aggrieved, a party must have a legally cognizable interest that is injuriously affected by the court's decision. (*In re Carissa G.* (1999) 76 Cal.App.4th 731, 734 [90 Cal.Rptr.2d 561].) We liberally construe the issue of standing and resolve doubts in favor of the right to appeal. (*Ajida Technologies, Inc. v. Roos Instruments, Inc.* (2001) 87 Cal.App.4th 534, 540 [104 Cal.Rptr.2d 686].)" (*In re Barbara R.* (2006) 137 Cal.App.4th 941, 952 [40 Cal.Rptr.3d 687].)

This court has held that "a parent has standing to assert the section 366.26, subdivision (c)(1)(E) exception to the termination of parental rights to the same extent the parent has standing to assert the subdivision (c)(1)(A)–(D) exceptions to termination of parental rights." (*In re L. Y. L., supra*, 101 Cal.App.4th at p. 951.) "A determination of each of those exceptions directly affects the parent's interest in the relationship with the minor; the parent is the aggrieved party in that determination." (*Ibid.*) Antonia has standing to

raise issues of sibling visitation affecting the applicability of section 366.26, subdivision (c)(1)(E).

### 2. *Antonia Does Not Have Standing to Appeal the Denial of Her Request for the Appointment of a Guardian Ad Litem or Counsel for Adriana*

We reject Antonia's claim she was directly affected by the court's denial of her motion to appoint a guardian ad litem or counsel for Adriana. "To be aggrieved, a party must have a legally cognizable immediate and substantial interest which is injuriously affected by the court's decision. A nominal interest or remote consequence of the ruling does not satisfy this requirement." (*In re Carissa G., supra*, 76 Cal.App.4th at p. 734.) "A party may not claim errors on appeal which only affect another party who did not appeal." (*In re Crystal J.* (2001) 92 Cal.App.4th 186, 189 [111 Cal.Rptr.2d 646].)

Even if the court erred in not appointing a guardian ad litem to protect Adriana's interests in her sibling relationships,[4] Antonia does not show more than a nominal interest in the consequence of the court's denial of her motion. Any prejudicial effect on Antonia's interest in these proceedings is merely speculative. Adriana's interest in her sibling relationships is independent from Antonia's interest in avoiding termination of her parental rights, and Adriana's interest may be considered even when parental rights are terminated in the siblings' case. (See §§ 366.29, 388, subd. (b); Fam. Code, § 8714.5, subd. (a)(2).)

---

[4] Section 388, subdivision (b) states, in part, that any person "may petition the court to assert a relationship as a sibling related by blood, adoption, or affinity through a common legal or biological parent" to a dependent child. The petitioner may request visitation with the dependent child, consideration when determining or implementing a case plan or permanent plan for the dependent child, or make any other requests for an order which may be shown to be in the best interest of the dependent child. (See *In re Hector A., supra*, 125 Cal.App.4th at pp. 792–794.)

Section 388, subdivision (b) provides for the appointment of "a guardian ad litem to file the petition for the dependent child asserting the sibling relationship if the court determines that the appointment is necessary for the best interests of the dependent child." The statute is silent as to the circumstances under which the court may appoint a guardian ad litem or counsel for a nondependent child. (But see Fam. Code, § 6601 ["A minor may enforce the minor's rights by civil action or other legal proceedings in the same manner as an adult, except that a guardian must conduct the action or proceedings"]; Code Civ. Proc., § 373 [relative or friend of a minor may request appointment as guardian ad litem]; *Berg v. Traylor* (2007) 148 Cal.App.4th 809, 816 [56 Cal.Rptr.3d 140] ["It is the court's responsibility to protect the rights of a minor who is a litigant in court"].)

The Agency argues Antonia is not Adriana's legal parent and therefore did not have standing to raise the issue on Adriana's behalf in the trial court. However, in view of the nine-year-old's inability to appear on her own behalf, the silence of section 388 on this point and the statute allowing "a friend or relative" to request appointment as guardian ad litem for a minor, we do not reject the claim of error on this ground.

## B

## *FORFEITURE*

The Agency asserts Antonia did not request that the court order sibling visitation between the children and Adriana until September 2006, and thus forfeited any claim of error on appeal. (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 221–222 [33 Cal.Rptr.3d 337].) The Agency also contends Antonia agreed to the structure of visitation ordered on September 20, 2006, and thus has forfeited this issue on appeal.

There is a general exception to the forfeiture rule for instances when an objection would have been futile. (*People v. Diaz* (2007) 150 Cal.App.4th 254 [58 Cal.Rptr.3d 287].) Here, the trial court ruled in December 2005 that Adriana was not the children's sibling. (*Valerie A., supra*, 139 Cal.App.4th at p. 1521.) In view of the court's ruling, a request for sibling visitation between the children and Adriana would have been futile. The issue is not forfeited on appeal.

However, we conclude that Antonia has forfeited her claim on appeal that the court erred in fashioning sibling visitation orders on September 20, 2006, by not objecting to the visitation schedule. Antonia argues the court should have ordered more frequent and extensive visitation between the children and Adriana. The record shows the parties, including Antonia, discussed how best to structure visitation in view of the distance between Adriana's home and the children's residence. Antonia specifically *agreed* that sibling visitation would take place every other week for two hours, and the bonding study would be scheduled after several visits had occurred. Thus, the issue is forfeited on appeal. (*In re Dakota H., supra*, 132 Cal.App.4th at pp. 221–222.)

## C

## *THE RECORD IS INADEQUATE TO REVIEW ANTONIA'S ARGUMENT THE COURT IMPROPERLY DENIED VISITATION AT THE POSTPERMANENCY REVIEW HEARING; WE CONSIDER THE ISSUE ABANDONED*

At the postpermanency planning review hearing held on June 22, 2006, the court made the following finding and order for each child: "The court finds by a preponderance of the evidence that visitation between the child and his/her sibling(s) WOULD NOT be detrimental to the child's best interests, and sibling visitation SHALL NOT occur." Antonia argues the court improperly denied sibling visitation. The Agency contends the court was without

jurisdiction to address the issue of sibling visitation from December 20, 2005, when Antonia filed a notice of appeal, until August 22, 2006, when remittitur issued.

We reject the Agency's argument the court did not have jurisdiction to consider the children's interests in sibling visitation until remittitur issued. The only case cited by the Agency in support of its argument, *In re Ronald V.* (1993) 13 Cal.App.4th 1803 [17 Cal.Rptr.2d 334], stands for the proposition the court may not modify or revoke a judgment terminating parental rights once it becomes final. (*Id.* at pp. 1805–1806; see § 366.26, subd. (i)(1).) Although Antonia's previous appeal was from the December 2005 judgment terminating parental rights, the pendency of that appeal did not strip the juvenile court of jurisdiction to fashion appropriate orders as permitted by statute. (§ 366.3; see §§ 202, 300.2.)

The juvenile court properly considers the dependent child's interest in sibling visitation throughout the case, including section 366.3 postperma-nency planning review hearings, and may modify visitation orders at subsequent hearings as the child's needs require.[5] (*In re Clifton B.* (2000) 81 Cal.App.4th 415, 427 [96 Cal.Rptr.2d 778]; see, e.g., § 366.29.) The court had jurisdiction at the postpermanency planning review hearing to consider sibling visitation.[6]

However, because we do not have an adequate record of the June 22, 2006 proceeding, we cannot knowledgeably rule on the merits of this issue, and we consider the claim abandoned. (Cf. *In re Mark C.* (1992) 7 Cal.App.4th 433, 445 [8 Cal.Rptr.2d 856].) It is the appellant's responsibility to include in the appellate record the portions of the reporter's transcript relevant to the appellant's issues on appeal. (*Bianco v. California Highway Patrol* (1994) 24 Cal.App.4th 1113, 1125 [29 Cal.Rptr.2d 711].) Antonia did not provide the record transcript of the June 22, 2006 postpermanency planning review hearing. Thus we cannot determine whether the court properly considered the sibling relationship, ordered sibling visitation and made a clerical error in denying visitation; whether the court intended to deny sibling visitation, made

---

[5] In addition, the juvenile court has the authority, both inherent and statutory, to modify a previous order, including an interim order the court recognizes as having been erroneously made. (*Nickolas F. v. Superior Court* (2006) 144 Cal.App.4th 92, 98–99 [50 Cal.Rptr.3d 208].)

[6] The trial court properly waited until remittitur issued before allowing Antonia to proceed as a party in the children's dependency cases, Antonia's parental rights were not reinstated until remittitur issued, and she had no standing to participate in the proceedings until that time. (*In re Francisco W.* (2006) 139 Cal.App.4th 695, 704–705 [43 Cal.Rptr.3d 171] [when a judgment is reversed with directions, the appellate court's order is contained in its remittitur, which revests the jurisdiction of the subject matter in the lower court and defines the scope of the lower court's jurisdiction]; see also *In re Zeth S.* (2003) 31 Cal.4th 396, 405 [2 Cal.Rptr.3d 683, 73 P.3d 541].)

a clerical error and misstated the standard of proof; or whether the finding and order resulted from inadvertence.[7]

Having addressed the preliminary claims of the parties, we now turn to a discussion of the statutory framework for sibling visitation and apply it to Antonia's assertion that the trial court erred in fashioning sibling visitation orders.

## III

## THE JUVENILE COURT IS REQUIRED TO CONSIDER A DEPENDENT CHILD'S INTEREST IN SIBLING VISITATION THROUGHOUT THE PROCEEDINGS

## A

### *THE STATUTORY FRAMEWORK FOR SIBLING VISITATION*

The juvenile court is required to consider the existence and nature of sibling relationships in all placement, visitation and permanency hearings. (Sen. Com. on Judiciary, Rep. on Assem. Bill No. 705 (2001–2002 Reg. Sess.) as amended June 11, 2001, p. 1 (hereinafter, Senate Report); Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1987 (1999–2000 Reg. Sess.) as amended Aug. 24, 2000, p. 1.) The statutory scheme reflects the Legislature's emphasis on the importance of "maintaining relationships between a dependent child and his or her siblings." (Sen. Rep., at p. 1.) " '[M]aintaining [sibling] relationships, under the right circumstances, is imperative for the emotional well-being of the [dependent] child now and in the future. For children who will never be returned to their parents, siblings may be the only true family they will ever have.' "[8] (Sen. Rep., at p. 4, quoting the Nat. Assn. of Counsel for Children, L.A. Affiliate.)

Section 362.1 governs visitation between a dependent child and a nondependent sibling. It provides that in order to maintain ties between any siblings and the dependent child and to encourage or suspend sibling interactions, any order placing a child in foster care shall provide for visitation between the child and any siblings pursuant to section 16002, subdivision (b), unless the

---

[7] The minute orders repeat verbatim the proposed findings and orders in the Agency's court report.

[8] In addition, unlike a child's relationship with a parent or adult caregiver, a sibling relationship may last throughout the child's lifetime.

court finds by clear and convincing evidence that sibling interaction is detrimental to either child. (§ 362.1, subd. (a)(2).)

Section 16002, subdivision (b) directs the social services agency to "make a diligent effort in all out-of-home placements of dependent children, including those with relatives, to develop and maintain sibling relationships. . . . When placement of siblings together in the same home is not possible, diligent effort shall be made, and a case plan prepared, to provide for ongoing and frequent interaction among siblings until family reunification is achieved, or, if parental rights are terminated, as part of developing the permanent plan for the child. If the court determines by clear and convincing evidence that sibling interaction is detrimental to a child or children, the reasons for the determination shall be noted in the court order, and interaction shall be suspended."

■ We reject the Agency's assertion that the juvenile court is not required to consider sibling visitation after parental rights are terminated but before any provisions are made for postadoption sibling contact under section 366.29. A division of this court has held that section 16002 contemplates sibling contact will be an ongoing issue, subject to periodic review throughout the dependency proceedings. "When the juvenile court terminates parental rights and refers a child for adoption, it retains jurisdiction over that child until the adoption is effected. During that interim period, the juvenile court can make visitation orders as it sees fit, and sibling contact should remain the subject of its concern." (*In re Clifton B, supra*, 81 Cal.App.4th at p. 427.) The Agency may not suspend sibling visitation unless the court determines by clear and convincing evidence sibling interaction would be detrimental to either sibling. (*Ibid.*; § 361.2, subd. (a)(2); § 16002, subd. (b); § 16501.1, subd. (f)(6).)

Having discussed the statutory framework for sibling visitation, we now turn to Antonia's claims that the trial court erred when it did not order sibling visitation while the prior appeal was pending and after remand, when it terminated sibling visitation despite the positive interactions between the children and Adriana. We review the trial court's resolution of disputed historical fact under the deferential substantial evidence rule, exercise our independent judgment of the law to be applied, and review the application of the law to the facts as a question of law when legal concepts and their underlying values must be considered or when the issue has practical significance beyond the confines of the case at hand. When the application of the law to the facts is based on experience with human affairs, the question is reviewed as a question of fact. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 800–801 [35 Cal.Rptr.2d 418, 883 P.2d 960].)

B

*ANTONIA'S CLAIMS OF ERROR*

1. *The Trial Court Erred in December 2005 When It Did Not Consider the Children's Interests in Sibling Visitation*

In *Valerie A., supra*, 139 Cal.App.4th at page 1524, this court held the trial court erred when it found Adriana was not the children's sibling. Because of this error, the trial court did not consider the children's interests in continued sibling contact with Adriana. (§§ 362.1, subd. (a)(2), 16002, subd. (b), 16501.1, subd. (f)(6); cf. *In re Clifton B., supra*, 81 Cal.App.4th at p. 427 [the juvenile court considered sibling visitation and properly exercised its discretion in fashioning a posttermination sibling visitation order].)

We cannot definitively determine what the trial court would have done had it properly considered the children's interests in their relationships with Adriana at the December 2005 permanency planning review hearing. However, for purposes of resolving the argument raised in this appeal, we accept that the lack of visitation did not "develop and maintain" the sibling relationships as section 16002, subdivision (b) directs, and may have been prejudicial to Antonia's efforts to prove that the children had a close and strong bond with Adriana under section 366.26, subdivision (c)(1)(E).

2. *The Court Did Not Err When It Suspended Sibling Visitation*

Antonia contends the court erred when it suspended sibling visitation on November 3, 2006. She argues the siblings' interactions were not detrimental to the children, and the court should have considered other orders to protect the children and should have continued sibling visitation.

Section 362.1, subdivision (a)(1)(B) states: "No visitation order shall jeopardize the safety of the child." The court suspended sibling visitation after it received reports that maternal relatives tried to follow J.D. and the children as they left the visit, a maternal relative relayed J.D.'s automobile license number to an unknown third party and threatened to "kick [J.D.'s] ass," and that later that day an attempt was made to run J.D.'s automobile off the road. Because the conduct of the maternal relatives posed a risk to the children's safety, the court properly exercised its discretion when it suspended sibling visitation.

## IV

## THE PROCESS THAT IS DUE

Antonia argues the erroneous deprivation of sibling visitation resulted in the deterioration of the children's sibling bonds with Adriana, and eroded Antonia's ability to litigate the exception to termination of parental rights under section 366.26, subdivision (c)(1)(E) in violation of the structural protections afforded a parent under the California dependency scheme. Antonia contends her procedural due process rights were violated because her "ability to prove the existence of a close and strong bond between her children, and thus avoid the termination of parental rights, as well as protect her children's interests in their relationship[,] was profoundly affected by the forced cessation of visitation." She relies on *In re Hunter S.* (2006) 142 Cal.App.4th 1497 [48 Cal.Rptr.3d 823] (*Hunter S.*), in which the appellate court reasoned the juvenile court did not properly enforce its order for visitation between the parent and child, and thus deprived the parent of the opportunity to establish the beneficial relationship exception under section 366.26, subdivision (c)(1)(A) in violation of the parent's due process rights. (*Hunter S.*, at pp. 1504–1505.)

As we shall explain below, section 366.26, subdivision (c)(1)(A) and (E) require different elements of proof; thus the corollary Antonia attempts to draw between those subdivisions is invalid.

### *THE LACK OF SIBLING VISITATION DOES NOT PREVENT THE PARENT FROM LITIGATING THE APPLICATION OF THE SIBLING RELATIONSHIP EXCEPTION TO TERMINATION OF PARENTAL RIGHTS*

■ "It is axiomatic that due process guarantees apply to dependency proceedings." (*Ingrid E. v. Superior Court* (1999) 75 Cal.App.4th 751, 756–757 [89 Cal.Rptr.2d 407], citing *Stanley v. Illinois* (1972) 405 U.S. 645, 658 [31 L.Ed.2d 551, 92 S.Ct. 1208].) "A parent's interest in the companionship, care, custody and management of his or her children is a fundamental civil right." (*In re Dakota H., supra*, 132 Cal.App.4th at p. 223.) Statutory procedures used for termination of parental rights satisfy due process requirements only because of the demanding requirements and multiple safeguards built into the dependency scheme at the early stages of the process. (*Hunter S., supra*, 142 Cal.App.4th at p. 1504, citing *Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 256 [19 Cal.Rptr.2d 698, 851 P.2d 1307] & *In re Marilyn H.* (1993) 5 Cal.4th 295, 307–308 [19 Cal.Rptr.2d 544, 851 P.2d 826].) "If a parent is denied those safeguards through no fault of her own, her due process rights are compromised." (*Hunter S.*, at p. 1504.)

A parent seeking to establish a beneficial parent-child relationship sufficient to avoid the termination of parental rights must show, by a preponderance of the evidence, that he or she has *"maintained regular visitation and contact with the child* and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(A), italics added.) In this context, appellate courts have recognized "a lack of visitation may 'virtually assure[ ] the erosion (and termination) of any meaningful relationship' between mother and child." (*Hunter S., supra,* 142 Cal.App.4th at p. 1504, quoting *In re Brittany S.* (1993) 17 Cal.App.4th 1399, 1407 [22 Cal.Rptr.2d 50].)

■ Under section 366.26, subdivision (c)(1)(A), a parent may avoid termination of parental rights only if the parent has *maintained regular contact and visitation with the child,* and the child would benefit from continuing the relationship. (*Hunter S., supra,* 142 Cal.App.4th at p. 1504.) To overcome the statutory preference for adoption, the parent must prove he or she occupies a parental role in the child's life, resulting in a significant, positive emotional attachment of the child to the parent. (*In re Derek W.* (1999) 73 Cal.App.4th 823, 827 [86 Cal.Rptr.2d 739]; *In re Elizabeth M.* (1997) 52 Cal.App.4th 318, 324 [60 Cal.Rptr.2d 557].) "Obviously, the only way a parent has any hope of satisfying this statutory exception is if she maintains regular contact with her child." (*Hunter S.,* at p. 1505.) If a parent is deprived of visitation with his or her child, the parent is not going to be able to establish the exception or have any meaningful opportunity to avoid the termination of parental rights under section 366.26, subdivision (c)(1)(A). (*Hunter S.,* at p. 1505.) Thus, the erroneous denial of parent-child visitation compromises a parent's due process rights to litigate and establish the section 366.26, subdivision (c)(1)(A) exception. (*Hunter S.,* at p. 1504.)

■ Unlike the beneficial parent-child relationship exception to termination of parental rights, under section 366.26, subdivision (c)(1)(E), a parent is not required to show as an element of proof that the siblings have maintained regular contact and visitation. Instead, the parent must prove, by a preponderance of the evidence, that termination of parental rights would cause "substantial interference with a child's sibling relationship, taking into consideration the nature and extent of the relationship." (*Ibid.*)

To determine the nature and extent of the sibling relationship, the Legislature directs the juvenile court to consider the factors set forth in section 366.26, subdivision (c)(1)(E). (*In re Celine R.* (2003) 31 Cal.4th 45, 54 [1 Cal.Rptr.3d 432, 71 P.3d 787]; *In re L. Y. L., supra,* 101 Cal.App.4th at pp. 951–952.) These factors include, *but are not limited to,* the following: "[W]hether the child was raised with a sibling in the same home[ *and*] whether the child shared significant common experiences *or* has existing close and strong bonds with a sibling[ *and*] whether ongoing contact is in the

child's best interest, including the child's long-term emotional interest, as compared to the benefit of legal permanence through adoption." (§ 366.26, subd. (c)(1)(E), italics added.)

By its plain language, section 366.26, subdivision (c)(1)(E) requires the court to consider each listed factor. However, the second factor is stated in the alternative and allows the court to consider whether the child shared significant common experiences with a sibling *or* whether the child has existing bonds with a sibling. " 'Or' is disjunctive, indicating the Legislature intended an alternative application." (*In re Lauren R.* (2007) 148 Cal.App.4th 841, 856 [56 Cal.Rptr.3d 151], quoting *Houge v. Ford* (1955) 44 Cal.2d 706, 712 [285 P.2d 257].) "The plain and ordinary meaning of the word 'or' is 'to mark an alternative such as "either this or that" [citations].' " (*Fiorentino v. City of Fresno* (2007) 150 Cal.App.4th 596, 603 [59 Cal.Rptr.3d 30], quoting *Houge v. Ford*, at p. 712.) "If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature . . . ." (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].)

██ We also note the Legislature used different verb tenses in the alternative prongs of this factor. "In construing statutes, the use of verb tense by the Legislature is considered significant." (*Hughes v. Board of Architectural Examiners* (1998) 17 Cal.4th 763, 776 [72 Cal.Rptr.2d 624, 952 P.2d 641]; accord, *United States v. Wilson* (1992) 503 U.S. 329, 333 [117 L.Ed.2d 593, 112 S.Ct. 1351] [legislative use of a verb tense is significant].) Here, the verb "shared" in the first prong is in past tense; the verb "has" in the second prong is in present tense. "The statute's use of two verb tenses . . . indicates that two time periods are involved." (*People v. Jeffers* (1987) 43 Cal.3d 984, 992 [239 Cal.Rptr. 886, 741 P.2d 1127].)

The legislative use of the past tense in the first prong of the second factor indicates that the court looks back in time when it considers whether the dependent child "*shared* significant common experiences [with a sibling]." (§ 366.26, subd. (c)(1)(E).) In comparison, when the court evaluates whether the dependent child "*has* existing close and strong bonds with a sibling" (*ibid.*), it looks to the present. The inclusion of the adjective "existing," which means "existent" or "having existence, being, or actuality," reinforces the legislative emphasis on the present in the second prong, and underscores the difference between the alternative prongs. (Webster's 3d New Internat. Dict. (2002) p. 796, col. 3.)

The alternative prongs of the second factor identified in section 366.26, subdivision (c)(1)(E) reflect the Legislature's acknowledgment that when children become involved in juvenile court proceedings, they often may have

little or no control in maintaining their sibling relationships. (Assem., 3d reading analysis of Assem. Bill No. 705 (2001–2002 Reg. Sess.), as amended May 7, 2001, pp. 2–3 ["[H]istorically, 'children's interests and preferences' in juvenile dependency proceedings in which their future placement is determined, 'particularly in maintaining important sibling relationships, have not always been heard or promoted for a number of reasons' "].) Although there are statutory preferences to keep siblings together in placement, the Legislature recognizes this goal is not always attained.[9] (§§ 306.5, 366, subd. (a)(1)(D), 16002, subd. (b).) We believe the alternative prongs of the second factor in section 366.26, subdivision (c)(1)(E) reflect the Legislature's intent that, when circumstances prevent a child from living with siblings or having regular sibling contact and visitation, the juvenile court may look to the past to determine the nature and extent of the sibling relationship, and is not required to assess the closeness and strength of the existing sibling bonds. (*Ibid.*)

We acknowledge that when the sibling relationship has been developed and maintained through sibling visitation (§ 16002, subd. (b)), the child's existing bonds with a sibling are likely to be stronger than when sibling visitation was impacted or did not occur. However, depending on the child, a lack of sibling visitation does not necessarily erode the sibling bond.[10] When it has, the legislative language does not require that the court consider the closeness and strength of the existing sibling bonds. Instead, the

---

[9] Section 306.5 states, in part: "[T]he social worker shall, to the extent that it is practical and appropriate, place the minor together with any siblings or half-siblings who are also detained or include in the report . . . a statement of his or her continuing efforts to place the siblings together or why those efforts are not appropriate."

In enacting section 361.5, which was enacted in the same legislation as section 366.26, subdivision (c)(1)(E), the Legislature recognized that practical considerations may result in the separation of dependent children from their siblings. (Stats. 2001, ch. 747.) To cite but a few examples, children may be removed from parental custody at different times under a different set of circumstances. There may be a lack of foster homes for large sibling groups. Half siblings may have a competent parent with whom they must be placed, or different relatives to whom the statutory preferences for placement apply. (§§ 361.2, 361.3.) The provisions of the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) may apply to a half sibling, but not to all siblings. (§ 361.31.) Levels of risk and serious detriment differ according to a sibling's age and needs, and children may be returned to parental custody at different times. (§§ 366.21, 366.22.) A nondependent sibling may not assert a sibling relationship under section 388, subdivision (b), and the juvenile court may be without jurisdiction to enforce an order authorizing sibling visitation between a dependent child and a nondependent sibling. In addition to placement issues, maintaining sibling visitation may be impractical because of distance or other circumstances.

[10] For example, the lack of visitation did not appear to have eroded the strength of Adriana's feelings toward her sisters. Had Adriana been the dependent sibling, the section 366.26, subdivision (c)(1)(E) exception may well have applied. However, here, Adriana was in a stable adoptive home, and the court properly focused on the needs of Victoria and Valerie, who were dependents of the juvenile court. (*In re Celine R., supra*, 31 Cal.4th at p. 54.)

court may consider whether the dependent child shared significant common experiences with a sibling, and evaluate the strength of the sibling relationship as it existed before the siblings were separated, or before regular visitation became impractical. (§ 366.26, subd. (c)(1)(E).) Thus, a parent may avoid termination of parental rights by showing that, under alternative factors, a significant sibling relationship existed or exists, and that continued sibling contact may be of greater *long-term* emotional interest to the child than adoption.[11] (*Ibid.*)

Further, we note that, unlike section 366.26, subdivision (c)(1)(A), the Legislature does not require the juvenile court to consider as an element of proof whether a dependent child has maintained regular visitation and contact with a sibling when it determined the applicability of subdivision (c)(1)(E). (Compare § 366.26, subd. (c)(1)(A) with subd. (c)(1)(E).) Thus, an erroneous denial of sibling visitation does not compromise the procedural due process rights of a parent seeking to prove the sibling relationship exception under section 366.26, subdivision (c)(1)(E) by foreclosing a parent's ability to meet the elements of proof required by statute.

Here, Antonia availed herself of evidence relevant to all factors described in section 366.26, subdivision (c)(1)(E). She presented evidence showing the children had almost daily contact with Adriana before they were removed from parental custody, and they subsequently were raised in the same home for seven months. Witnesses testified about the children's attachment to Adriana, her devotion to them and the activities they shared. Antonia entered into evidence Dr. Murphy's two highly favorable reports about the sibling relationships. Thus, even in view of the trial court's erroneous holding that Adriana was not the children's sibling (*Valerie A., supra*, 139 Cal.App.4th at pp. 1524–1525) and resultant lack of consideration of the children's interests in sibling visitation at the December 2005 hearing, Antonia was not deprived of the ability to litigate the subdivision (c)(1)(E) exception at the second section 366.26 hearing in violation of her right to procedural due process.

Having concluded that Antonia was not deprived of her right to litigate the section 366.26, subdivision (c)(1)(E) exception to termination of parental rights in derogation of her right to due process, we now discuss Antonia's assertion that she was denied due process because of trial error.

---

[11] In using the word "*long-term*," the Legislature instructs the court to consider the current and future importance of sibling contact to the child. In other words, the juvenile court does not conduct a static assessment of the child's emotional interest in maintaining the sibling relationship at only one point in time. (§ 366.26, subd. (c)(1)(E).) This assessment does not necessarily reflect the *child's* current understanding of the emotional benefits of a sibling relationship, but takes into account the future emotional benefits to the child from maintaining sibling contact throughout his or her life, which might be an abstract concept to a child.

V

## THE COURT REASONABLY EXERCISED ITS DISCRETION WHEN IT ALLOWED THE SOCIAL WORKER TO OBSERVE SIBLING VISITATION AND GRANTED A BONDING STUDY BY AN EXPERT WITNESS

Antonia contends the court erred when it denied her motion to allow a neutral observer[12] to be present during sibling visitation. She asserts the social worker was personally biased, and was subject to a conflict of interest because she was an employee of the Agency, a party to the action. Antonia argues she was denied due process because one party had unfettered access to the disputed evidence, while the party with the burden of proof was denied access to that information. She argues the court erred when it denied her motion to strike the social worker's report and testimony concerning her observations of sibling visitation, and also asserts she was denied a meaning-ful opportunity to rebut the social worker's testimony about the quality of the children's interactions with Adriana.

The Agency asserts the court did not abuse its discretion when it denied Antonia's motions to have a neutral observer present at all sibling visits. The Agency argues the juvenile court is required by law to consider the social worker's reports, testimony and recommendations, and contends there was no legal or factual basis to exclude the social worker's reports or testimony from the section 366.26 hearing.

█ "The Agency has a duty to apprise the court of all relevant facts and circumstances when issuing reports. (§ 328; *In re Joshua G.* (2005) 129 Cal.App.4th 189, 197 [28 Cal.Rptr.3d 213], citing *In re John F.* (1994) 27 Cal.App.4th 1365, 1377–1378 [33 Cal.Rptr.2d 225].) 'At each stage of the dependency proceeding, the social services agency is statutorily mandated to prepare social study reports and make recommendations to assist the court. (§§ 280, 281, 319, subd. (b), 358, subd. (b), 358.1, 361.5, subd. (c), 364, 365, 366.21, subds. (c), (e), (f), 366.22, subd. (a), 366.26, subd. (b).) In this role, the social services agency acts as an impartial arm of the court in assisting the court to carry out the Juvenile Court Law.' (*In re Ashley M.* (2003) 114 Cal.App.4th 1, 7–8 [7 Cal.Rptr.3d 237], citing *In re Malinda S.* (1990) 51 Cal.3d 368, 377, fn. 8 [272 Cal.Rptr. 787, 795 P.2d 1244] and Seiser & Kumli, Cal. Juvenile Courts Practice and Procedure (2003) § 2.63[1],

---

[12] Here, the phrase "neutral observer" means a person who is not a party or employed by a party to the dependency case. The use of this phrase does not suggest bias on the part of any other witness.

pp. 2-121 through 2-122; see also §§ 309, 319, subd. (a.).)" (*Nickolas F. v. Superior Court, supra*, 144 Cal.App.4th at p. 108.) "The duties to furnish child welfare services and to provide reports and recommendations to the juvenile court are actually placed by statute upon 'the social worker.' " (*In re Ashley M.*, at p. 8.)

A trial court, in its discretion, may appoint and select expert witnesses. (Evid. Code, § 730; *In re Daniel C. H.* (1990) 220 Cal.App.3d 814, 833 [269 Cal.Rptr. 624].) Here, the court acted within its discretion when it denied Antonia's request for a neutral observer at all sibling visits.[13] The court noted that Dr. Murphy was a neutral observer. Dr. Murphy testified that two hours was sufficient time to observe the nature of the siblings' interactions. In addition, he previously observed the children's interactions with Adriana and commented favorably on the nature and extent of the children's bonds with Adriana. Thus the court ensured Antonia had access to an expert, whose observations and opinion could be used to present her case and to rebut the observations and conclusions of the social worker.

The court did not err when it denied Antonia's preliminary motion to strike the social worker's testimony and report. At that time, the court had no basis to conclude the social worker would not be an objective reporter. On this record, considering the legal duties imposed on the social worker, we believe the court would have abused its discretion had it granted the motion to strike. (See *In re Ashley M., supra*, 114 Cal.App.4th at pp. 7–8.) In responding to Antonia's concerns about possible bias on the part of the social worker, the court noted that Dr. Murphy was a neutral observer and could comment on any possible bias or inappropriate action taken by the social worker.

Further, the court reasonably rejected Antonia's argument that the social worker was biased. Bias is a question of credibility to be resolved by the trier of fact. (*In re Crystal J.* (1993) 12 Cal.App.4th 407, 412–413 [15 Cal.Rptr.2d 613]; *In re Autumn H., supra*, 27 Cal.App.4th at p. 576.) Here, the court determined that the social worker was a "compelling witness." We infer the court found her to be credible. We also note Adriana was a competent and independent witness, and her testimony independently corroborated key elements of the social worker's observations of the children's responses to and interactions with Adriana at the visits.

We conclude the court did not abuse its discretion when it denied Antonia's motions to have a neutral observer present at all sibling visits and to strike the social worker's testimony and report. As we have discussed, the social

---

[13] In addition, Antonia ignores the fact that Adriana, a nonparty, was present at all three visits and was competent to testify.

worker is required by statute to assess the sibling relationship, report to the court and make permanency plan recommendations. The court acted within its discretion when it appointed an expert witness to conduct an observation of the sibling relationships during one of the visits. Antonia had access to and presented evidence, including expert testimony, relevant to all factors set forth in section 366.26, subdivision (c)(1)(E).

Further, as required by principles of due process, Antonia was provided the opportunity to present witnesses, cross-examine the social worker and question her objectivity, rebut the social worker's observations of the siblings' interactions and challenge her conclusions concerning the nature and extent of the sibling relationships. (See *In re Malinda S., supra*, 51 Cal.3d at p. 383; *In re Dolly D.* (1995) 41 Cal.App.4th 440, 444 [48 Cal.Rptr.2d 691]; § 311, subd. (b); Cal. Rules of Court, rule 5.534(j).) The court did not err, and Antonia's due process rights to a fair trial were not compromised.

## VI

### THE RECORD SUPPORTS THE COURT'S DETERMINATION THAT THE SIBLING RELATIONSHIP EXCEPTION DID NOT APPLY

Considering the factors listed in section 366.26, subdivision (c)(1)(E), the record clearly shows the children's best interests were served by adoption and the sibling relationship exception did not apply to preclude termination of parental rights. The children and Adriana were raised in the same home for a relatively short period of time. Although they had contact with Adriana since birth, the trial court reasonably could infer the experiences the children shared with Adriana would not be as meaningful to them, as infants and toddlers, as the experiences were to Adriana, who was six years older. Even though Adriana's interactions with the children were loving, affectionate, playful and nurturing,[14] the court reasonably could determine the children's long-term emotional interests, due to their ages and needs, were better served by the permanency of adoption rather than by continued sibling contact.

---

[14] As the trial court recognized, in one sense, this was a difficult case because the nature of Adriana's affections for and devotion to her sisters would support a conclusion that, in the absence of family hostilities, the continuation of the sibling relationship would benefit Adriana, as well as the children. (*In re Naomi P.* (2005) 132 Cal.App.4th 808, 823 [34 Cal.Rptr.3d 236] [sibling testimony can provide indirect evidence of the dependent child's best interests].)

With respect to Adriana's interests, "the ultimate question is whether adoption would be detrimental to the adoptive child, not someone else. This conclusion does not mean that the court must totally disregard the interests of the sibling or the significance of the sibling relationship when it orders adoption. When appropriate, the court can encourage the adoptive parents to agree to visits among the siblings although, as the court recognized in this case, it cannot require them to do so." (*In re Celine R., supra*, 31 Cal.4th at p. 55.) Here, the

Even had the court determined that the nature and the extent of the sibling relationship was significant, and the children would benefit by its continuation, the court could not ignore the practical realities of the extended family's circumstances in considering whether termination of parental rights would substantially interfere with the sibling relationships. (§ 366.26, subd. (c)(1)(E) [the court may consider factors other than those listed].) But for the actions of the maternal relatives, J.D. was willing to allow Adriana to continue to visit Valerie and Victoria. At the time of the section 366.26 hearing, J.D. was willing to consider future contact between the children and Adriana. Thus, termination of parental rights did not necessarily foreclose the continuation of the sibling relationships.

Conversely, a plan of guardianship or long-term foster care with J.D. would not facilitate sibling visitation.[15] Unless the safety issues and family hostilities that necessitated the suspension of sibling visitation in November 2006 were resolved, a guardian, under juvenile court supervision, would still need to structure a placement for the children free from emotional strife and the threat of physical harm. Under these circumstances, the selection of a lesser preferred permanency plan would not further the children's interests in maintaining their relationships with Adriana, nor would it provide them with the security and sense of belonging conferred by adoption. (*In re Autumn H., supra*, 27 Cal.App.4th at p. 575.)

 This court has previously stated that the application of this exception will be rare, particularly when the proceedings concern young children whose needs for a competent, caring and stable parent are paramount. (*In re L. Y. L., supra*, 101 Cal.App.4th at p. 950.) Here, the record shows there would not be substantial interference with the children's sibling relationships, considering the nature and extent of those relationships. The children's best interests were served by adoption, and the selection of an alternative permanency plan would not resolve the family hostilities that had jeopardized the children's safety and prevented continued sibling visitation. We conclude that the court did not err when it found the children were adoptable and no exceptions applied to preclude termination of parental rights. (§ 366.26, subd. (c)(1).)

---

unanswered question is whether the extended family's circumstances will allow the court, when it finalizes the children's adoption, to appropriately encourage the children's relationships with Adriana.

[15] The children have an interest in not being uprooted from their stable two-year placement with J.D. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317 [27 Cal.Rptr.2d 595, 867 P.2d 706], quoting *Burchard v. Garay* (1986) 42 Cal.3d 531, 538 [229 Cal.Rptr. 800, 724 P.2d 486]: " 'When custody continues over a significant period, the child's need for continuity and stability assumes an increasingly important role.' ") Thus, a plan of guardianship or long-term foster care was not likely to result in a change of placement for the children.

## DISPOSITION

The judgments are affirmed.

Huffman, Acting P. J., and Aaron, J., concurred.

A petition for a rehearing was denied July 18, 2007, and appellant's petition for review by the Supreme Court was denied October 10, 2007, S155096.